Syllabus.

## J. B. MORTIMORE *v.* L. A. RAGSDALE.

1. BAILEE. *Action against. On warehouse receipt for cotton. Primâ facie case.*

In an action by the holder of a warehouseman's receipt to recover the value of the cotton embraced in the receipt, the plaintiff need only produce the receipt in evidence and prove a demand upon the defendant for the cotton before the institution of the action to establish his *primâ facie* right to recover. It then devolves upon the defendant, if he would defeat the action, to rebut the case made by the plaintiff.

2. SAME. *Identification of property.*

And, in such case, it is not necessary for the plaintiff to identify the cotton for whose value he sues in any other manner than by the receipt.

3. SAME. *Delivery of property to bailor's vendee. Receipt not taken up.*

Although by his receipt a warehouseman may be bound to deliver the property receipted for only upon return of the receipt properly indorsed, yet if the bailor sell the property unconditionally to a third person, the warehouseman may deliver the same to such third person as the owner thereof without taking up the receipt and without it having been indorsed to the bailor's vendee.

4. SAME. *Delivery of property to third person. Burden of proof.*

But if the warehouseman would defeat the bailor's demand for the property thus delivered to his vendee, he must establish the latter's right to receive the property.

5. SAME. *Notice of vendee's rights. Effect.*

And the warehouseman would not be justified in delivering the property to any other person after notice of the legal ownership of such vendee, though the latter may not have received from the bailor the warehouse receipt for the property properly indorsed.

6. SAME. *Seizure of property under legal process. Duty of bailee.*

If property stored in a warehouse be seized under legal process against any person, except the owner or the warehouseman, it is the duty of the latter to give notice of such seizure and all the material facts known, or which might have been known to him by the exercise of reasonable care and inquiry, to the owner of the property, he having given notice of his claim of ownership, or, in the absence of such notice of claim by any other, then to the person to whom the receipt for the property was issued.

7. SAME. *Notice of seizure. Liability of bailee.*

If the warehouseman, in such case, fail to give the notice indicated, he makes himself liable to the owner of the property for any loss which may result therefrom.

Statement of the case.

8. SAME.   *Seizure against owner.   Discharge of bailee.*

If property stored in a warehouse be seized under legal process against the owner thereof, that is a discharge of the bailee, though his receipt may have been issued to and be held by another person.

APPEAL from the Circuit Court of Lauderdale County.

HON. S. H. TERRAL, Judge.

J. B. Mortimore, a merchant in the city of Meridian, brought this suit against L. A. Ragsdale, the proprietor of a warehouse there, to recover the value of thirty-nine bales of cotton which the plaintiff claimed as the holder and owner of certain warehouse receipts given by the defendant.

The evidence at the trial developed substantially these, among other facts: On the 19th of January, 1881, C. L. Wilder & Co., cotton brokers in Meridian, bought from Mortimore fifty-eight bales of cotton, marked "J. B. M.," and numbered from "342" to "400" inclusive.   Nineteen of the fifty-eight bales were then in Ragsdale's warehouse, and the others were immediately removed there.   On the same day that Wilder & Co. bought the cotton, but after it had all been collected in Ragsdale's warehouse, they shipped forty-two bales thereof from Meridian to some distant point, leaving sixteen bales in the warehouse.   Mortimore had Ragsdale's warehouse receipts for the nineteen bales of cotton originally stored there, one being for five bales and numbered "114," and the other for fourteen bales and numbered "112."   These receipts, which stated that the cotton was held "subject to his (Mortimore's) order on return of these receipts properly indorsed," were never delivered to Wilder & Co.

On the 21st of January, 1881, Wilder & Co. gave Mortimore a draft for five hundred and fifty-seven dollars and fifty-seven cents, and on the 25th day of the same month a draft for five hundred and thirty-one dollars and eighty-eight cents in part payment for the fifty-eight bales of cotton, and on the last named day they delivered to him two of Ragsdale's warehouse receipts, numbered respectively "56" and "125," the former being for three bales of cotton and the latter for seventeen bales.   Number "56" was issued to T. C. Carter & Co., but indorsed to Wilder & Co., and

number " 125 " was issued to Wilder & Co. Both receipts contained the same language as that above quoted from the receipts held by Mortimore for the nineteen bales mentioned. Wilder stated at the time he delivered them to Mortimore that his firm could not pay the latter for his cotton. The receipts were given in part payment of or as collateral security for the debt due Mortimore by Wilder & Co. All but three bales of the cotton embraced in receipts " 56 " and " 125 " were in Ragsdale's warehouse at the time the receipts were delivered to Mortimore. Although these receipts were delivered to Mortimore on the 25th of January, they were not indorsed by Wilder & Co. till the 31st day of that month. This suit is based upon the four receipts numbered " 114," " 112," " 56," and " 125."

On the 26th of January, 1881, Wilder & Co. failed in business, and all the cotton in Ragsdale's warehouse claimed by them was seized under attachments sued out by their creditors. After the institution of this action, Mortimore intervened as claimant in several of the attachment suits and recovered eighteen bales of the cotton covered by his receipts against Ragsdale's warehouse, and included in the thirty-nine which are the subject of this suit. He also recovered a judgment against the Mobile and Ohio Railroad Company for the value of two other bales of the thirty-nine here in controversy. At the trial the plaintiff relinquished his claim as to eighteen bales of cotton, on account of the recovery of that number as above stated, but claimed judgment for the value of the remaining twenty-one, including the two bales for whose value he had recovered judgment against the railroad company, that judgment not having been collected.

The plaintiff claimed that he demanded of Ragsdale the cotton embraced in the four receipts held by him before the failure of Wilder & Co., and also after their failure and before the institution of this suit, but the defendant denied that any such demand was made before Wilder & Co. failed, or that any demand was ever made for any particular cotton. Mortimore stated that the sale of the cotton to Wilder & Co. was made upon the condition that it should be paid for in cash, but he is contradicted by Wilder and another witness.

The court gave for the defendant the following, among other instructions:

" 2. The court instructs the jury that by the terms of the receipt numbered " 125," given to Wilder & Co., the cotton therein was held by defendant subject to the order of Wilder & Co., and no person had a right to demand from Ragsdale the cotton described in said receipt, unless the person making such demand for said cotton presented said receipt properly indorsed by Wilder & Co., and unless the said receipt, properly indorsed by Wilder & Co., was presented to Ragsdale, he was not required to deliver the cotton described in said receipt, and if the jury believe from the evidence that said receipt was not indorsed by Wilder & Co. until the 31st of January, 1881, and that when said receipt was indorsed by Wilder & Co. to Mortimore, the cotton described therein had been shipped out of the warehouse by Wilder & Co., or bills of lading given by Wilder & Co. to the railroads for said cotton, or that said cotton had been seized or taken possession of by persons claiming cotton of said Wilder & Co., then the indorsement of said receipt amounted to nothing, conveyed no right or title to the cotton described therein to Mortimore.

" 4. The court instructs the jury that before they will be authorized to find a verdict for the plaintiff, they must be satisfied that he has identified the bales of cotton he claims as undelivered, and unless he has done so the jury should find for the defendant.

" 6. The court instructs the jury that the defendant, as warehouseman, is not responsible to the holder of his receipts for cotton shipped out of his warehouse by the owners prior to the indorsement and delivery of his receipts to Mortimore by Wilder & Co.

" 8. The court instructs the jury that the payment of the price of personal property is not essential to pass the title of the same to the purchaser, except where agreed or implied, especially in this case, where the custom in previous transactions of a similar character between similar parties is shown by the evidence to have been that the purchaser was permitted to take charge of the property and treat it as his own before payment by having cotton compressed

and shipped out of the warehouse before paying for it, and making payments as called upon by the seller.

" 11. The court instructs the jury that although it is the general rule that delivery and payment are essential to pass title in personal property, yet neither is necessary if it appears from the evidence that it was the intention of the parties to the contract that title should pass to the purchaser before payment and delivery. And in order to ascertain the intention of the parties, Wilder & Co. and Mortimore, as to whether the title of the cotton in question should pass to Wilder & Co. upon the contract of sale and before the payment and delivery, they are to consider all the facts, circumstances, declarations, and previous dealings between said parties, as the same may have been shown by the evidence. If the jury then believe that it was the intention of said parties that the property in said cotton should pass to the said Wilder & Co. before payment or delivery, then they must find for the defendant.

" 12. If the jury believe from the evidence that Mortimore received from Wilder & Co. two drafts, one for the sum of five hundred and fifty-seven dollars and fifty-seven cents, and the other for five hundred and thirty-one dollars and eighty-eight cents or thereabout, in part payment of a lot of fifty-eight bales of cotton, in the warehouse of defendant, and afterward or prior to that time also delivered to Mortimore two warehouse receipts of defendant, one for three bales of cotton and the other for seventeen bales, as collateral security for the balance due him (Mortimore) on the said lot of fifty-eight bales of cotton, and if the jury further believe from the evidence that the said Mortimore afterward removed the twenty bales of cotton specified in said two warehouse receipts, or any other twenty bales by virtue of said receipts, it matters not whether the two drafts were paid or not, the jury will find for the defendant.

" 14. If the jury believe from the evidence that on the 19th of January, 1881, Mortimore agreed to sell to Wilder & Co. a lot of fifty-eight bales of cotton, numbered from 342 to 400, including these two numbers, and that Wilder & Co. agreed to purchase said lot of cotton, and that on said day Mortimore furnished Wilder & Co. an account of the sale of said cotton, stating the number of bales

and the number on each bale, and the weight of each bale, and the aggregate weight of all the bales, and the price per pound, and the amount of the purchase-money, and that said Wilder & Co , on account or in part payment for said lot of cotton, gave Mortimore two drafts, one for five hundred and fifty-seven dollars and fifty-seven cents and the other for five hundred and thirty-one dollars and eighty-eight cents, and that the cotton now sued for—the five bales embraced in the receipt numbered " 114 " and the fourteen bales embraced in the receipt numbered " 112 "—was part of said lot of fifty-eight bales of cotton then sold by Mortimore to Wilder & Co., then the sale was complete and the title of the cotton vested in Wilder & Co., and the jury should find for the defendant."

The jury found a verdict for the defendant, and from the judgment thereon the plaintiff appealed to this court.

*L. Brame,* for the appellant.

This case was a very simple one. The plaintiff claimed judgment for the value of twenty-one bales of cotton, and produced warehouse receipts of the defendant for the same. This made out a *primâ facie* case.

What was the defense? How did the defendant account for the cotton ? Did he prove that it was never in the warehouse, or that the. receipts had been issued by mistake or were fraudulently procured? Nothing of the kind.

The only issue of fact between the parties is that Mortimore says that he made a demand of Ragsdale and his agent, Hull, before the failure of Wilder & Co., and afterward too, while Ragsdale testifies that no demand was made on him for the cotton until *after* the failure of Wilder & Co.

Let us *concede* that no demand was made until after Wilder & Co. failed. How does that affect our right to recover under the facts set out in this record ? If the demand was made at any time before suit brought, that was sufficient ; in fact, the *suit* was probably a sufficient demand.

Ragsdale wholly fails to account for this cotton, or to show where it went, or how it went, or what became of it.

Ragsdale and his agent, Hull, were both notified that Mortimore

held the receipts Nos. 56 and 104 by transfer from Wilder & Co., for he made a demand for this cotton before the failure of Wilder & Co.

The other receipts stood in Mortimore's *own name*, and he held on to them.

If Ragsdale allowed Wilder & Co. to ship out the cotton after this without surrendering the warehouse receipts, he did so at his peril, but Wilder & Co. did not ship the cotton out.

If the cotton was levied upon in his hands as the property of Wilder & Co. or of any other third person, it was his duty to hold on to it or to notify the owner.

If it was levied on as his own property, he would, of course, be liable.

· Some point seems to have been made in the court below as to the time Wilder & Co. indorsed the receipt No. 125 for the seventeen bales, which specified that the cotton had been received from them, but that is immaterial.

The mere *delivery* of the receipt gave the plaintiff full right, and Wilder & Co. would have been compelled by a court of equity to make the indorsement if necessary.

The indorsement of such a receipt would probably be necessary to confer a legal title in order to enable the transferee to bring an action at law in his own name for a breach of the stipulations therein; but it was not necessary for any other purpose.

Great stress seems to have been laid upon the point that the sale of the fifty-eight bales was absolute, and that the title passed to Wilder & Co., although they did not comply with the terms of the cash sale. But except so far as applicable to the four bales embraced in receipts 114 and 112, this question was immaterial. It certainly had no application to the seventeen bales embraced in receipt No. 125, which had been given to Wilder & Co., and which was by them transferred to the plaintiff.

As to the other four bales, we are also entitled to recover under the facts of this case whether the title passed in the sale of the fifty-eight bales to Wilder & Co. or not. Mortimore had the cotton there in the warehouse and had the receipts for the same (Nos.

114 and 112). These receipts never passed out of his possession, and it is clear, under the circumstances, as Wilder & Co. did not comply with the terms of the sale, that no title ever did pass, and therefore Mortimore had nothing to do but demand his cotton from the warehouseman.

It was manifestly improper for the court to instruct the jury that the plaintiff could not recover without identifying the particular bales of cotton. The knowledge as to the numbers, weight, and description of the cotton was peculiarly with the warehouseman and his agents, and it was incumbent upon *him* to account for every bale of the cotton.

*Woods & McIntosh,* for the appellee.

In the court below, the theory of the plaintiff was that he had not made an absolute sale of any of the cotton to Wilder & Co. ; that the sale was conditioned upon payment, and inasmuch as he had not been paid for it, he had not parted with his title to the cotton, and hence had the right to demand of the warehouseman, as his cotton, any of the fifty-eight bales he had so conditionally sold. He utterly failed upon that theory.

The sale was absolute, and the title to the whole fifty-eight bales passed to Wilder & Co., notwithstanding it was a cash transaction and the price was not paid.

But counsel for appellant in this court seems astonished that " *great stress* seems to have been laid in the court below upon the point that the sale of the fifty-eight bales was absolute."

It is argued here that that question is immaterial as to all except the four bales sued for embraced in receipts Nos. 114 and 112 ; that is as to the seventeen bales embraced in the receipt No. 125, because that receipt had been given Wilder & Co. by the appellee, and by them transferred to the appellant. For reply to that we beg leave to call the attention of the court to the answer of Mortimore in the injunction suit.

In that answer he swore that he had recovered the seventeen bales included in receipt No. 125, one of the three bales in receipt No. 56, and had recovered a judgment against the M. & O. R. R. for the other two bales in receipt No. 56, and had given credit to

Ragsdale for them—that is, for twenty bales—and then only claimed for the cotton embraced in receipts No. 114, for five bales, and No. 112, for fourteen bales.     That answer was read in evidence before the jury upon the trial of this suit in the circuit court, and there, in the circuit court, he swore that he was contending for the cotton embraced in receipt No. 125 and four other bales; that he would not undertake to say in which one of the receipts they were embraced; that two were embraced in receipt No. 114, and two in receipt No. 112, but he "didn't know which from which." The proof is that he sold the fifty-eight bales to Wilder & Co., and in payment for the same received two drafts and the two receipts Nos. 56 and No. 125, for twenty bales—" that and nothing more." Hence the twelfth instruction given for defendant below was correct.

There was a conflict in his own testimony as to what cotton he had recovered.     At one time he swore he had recovered all embraced in receipts Nos. 56 and 125.     Upon that affidavit he had succeeded in dissolving the injunction; and again he swore, upon the trial of this case in the circuit court, that he was suing for that embraced in receipt No. 125, etc.     It was a question for the jury to say whether or not he had recovered the cotton embraced in receipts Nos. 125 and 56, and if they believed that he had, of course they should have returned a verdict against him.

It was incumbent upon him, as plaintiff, to show to the satisfaction of the jury by a preponderance of the evidence that he had not recovered the cotton he then claimed in this suit.     He failed to do it, and the jury properly gave a verdict against him.

But it is argued here that when Wilder & Co. failed to pay Mortimore for fifty-eight bales in money, that he settled with him by giving him the two drafts, the two receipts Nos. 56 and 125, one for three and the other seventeen bales, and *left* with him the other receipts, Nos. 114 and 112, one for five and the other fourteen bales, both of which had been issued to him as further security or payment.     There is no proof of that assertion in the record.

It is true Mortimore never delivered the two receipts Nos. 114 and 112 to Wilder & Co., but he sold them the nineteen bales of cotton

embraced in them ; the title to the cotton passed to them, notwith-standing he held on to the receipts.

The appellant below undertook to prove that he made demand upon the appellee for the whole thirty-nine bales of cotton embraced in all four of the receipts. That was necessary under the pleadings. But he failed to establish it by a preponderance of the evidence to the satisfaction of the jury. In fact, the jury were justifiable in reaching the conclusion that he never made any demand either upon Ragsdale or his agent, Hull, before Wilder & Co.'s failure or after-ward.

Unless he demanded the cotton with the receipts *properly in-dorsed*, he had no right to the cotton, for it was upon that condition the receipts were issued. The proof by both Mortimore and Wilder is that the receipts were not indorsed until the 31st day of January. Wilder & Co. failed and the attachments were issued and levied upon every bale of cotton he had in the warehouse on the 26th. If then his demand was, as he says, before Wilder & Co.'s failure, the receipts were not indorsed. If they were indorsed after the failure, then all the cotton had passed beyond the control of the appellee and was in the hands of the sheriff by virtue of writs of attach-ment issued at the suit of Wilder's creditors against him.

COOPER, J., delivered the opinion of the court.

The plaintiff, when he had introduced the warehouse receipts and proved a demand upon the defendant or his agent for the property therein described, at any time before the institution of this suit had a *primâ facie* right to recover the value of the property, and the burden of proof devolved upon the defendant to rebut the case made by the plaintiff. It was not necessary for the plaintiff to identify the cotton in any other manner than by the receipts, nor to show which of the bales of cotton had been recov-ered by him from other parties, into whose possession it had gone from the warehouseman. On the other hand, it was for the de-fendant to show a delivery to the plaintiff, or to some one who at the time had lawful authority to receive the property.

The fact that the contract of bailment bound the warehouseman

to deliver the property only upon a return of the receipts properly indorsed, did not prevent the legal title from passing from the bailor to his vendee by a consummated sale without an indorsement of the receipts. The legal title to the cotton was one thing, the right to require a delivery of it by the warehouseman was another. The one might be acquired by a legal purchase, and what was a legal purchase would be determinable by the rules of law; the other could be gained only by conformity to the terms of the contract of bailment, and these terms are disclosed by the face of the receipts.

If Mortimore sold the cotton named in his receipts to Wilder & Co. absolutely and unconditionally, but did not deliver to them the receipts properly indorsed, and in this condition of things the defendant delivered the cotton to Wilder & Co., such delivery was legal, notwithstanding the receipts were not taken up by him and were not indorsed to Wilder & Co., for that was a delivery to the true owner. But the burden of establishing the right of Wilder & Co. so to receive the cotton was upon the defendant.

So, on the other hand, if Wilder & Co. sold to the plaintiff the cotton deposited by themselves or by Carter & Co., but failed to indorse the receipts, the legal title passed to the plaintiff, and a delivery by the defendant to other persons, after notice of plaintiff's claim, would not relieve him from liability to the plaintiff.

If the cotton was seized under legal process against any other person than the defendant or the owner, and the defendant gave notice of such seizure and of all the material facts known to him, or which might have been known by the exercise of reasonable care and inquiry, to the person then owning, and who had notified the defendant of his claim to the cotton, the defendant is relieved from liability; and in the absence of notice of a claim by other parties, he would be justified in acting as if the person to whom the receipts had been given had continued owner.

But by reason of his relation to the property, it was his duty to preserve it to the owner, and when seized by legal process which he could not resist, to seasonably inform the owner of the seizure, in order that he might assert his claim thereto; failing in this, his

responsibility continues, and he is liable for all loss which resulted. Scouler on Bailments 410, note 3; *O. & M. R. R.* v. *Yohe,* 51 Ind. 181; *Bliven* v. *R. R.,* 36 N. Y. 403.

If the cotton was seized and taken under legal process against the owner, this was a legal discharge of the bailee. These views sufficiently indicate the principles which control this cause; they were not applied in the trial which has been had, and the

*Judgment is reversed and cause remanded.*