## A. R. SELLECK v. MACON COMPRESS & WAREHOUSE CO.

1. BAILMENT. *Warehouse receipts. Transfer. Replevin by bailor.*

   A bailor whose warehouse receipts for cotton in store are held in pledge by a third person, cannot, either in his own name or for the use of the pledgee, maintain replevin therefor, or trover for its conversion.

2. CHANCERY JURISDICTION. *Bailment. Confusion of goods. Mistake. Parties.*

   Complainant sold cotton for which she held warehouse receipts, but, through mistake, delivered to the purchaser bills of lading for a like quantity which the warehouse had received from a railroad for her. These were replaced by warehouse receipts, on surrender of which the quantity of cotton called for, was, by the warehouse company, delivered to the purchaser. Complainant subsequently pledged her receipts to a bank, but the warehouse company refused to honor them, claiming that the cotton called for by them had been delivered to said purchaser, and refused to deliver the other cotton because complainant did not have the bills of lading. *Held*, that the mistake and consequent confusion gave equity jurisdiction to compel delivery of the remaining cotton to the bank on surrender of its receipts, and for payment to complainant of the surplus, and that in such suit, the bank is a proper party.

FROM the chancery court of Noxubee county.

HON. T. B. GRAHAM, Chancellor.

This is an appeal from a decree sustaining a demurrer to a bill and dismissing the same. The case, as made by the bill, is as follows: Complainant is a dealer in cotton, and, as such, had stored with defendant, Macon Compress & Warehouse Company, thirty-seven bales of cotton, for which she was given warehouse receipts. The said company was accustomed to receive cotton from the Mobile & Ohio Railroad Company for compressment and storage, and it was its custom to honor the receipts of the railroad and deliver the cotton to the holders of such receipts, or else issue its own receipts in lieu thereof. Complainant held receipts of said railroad for thirty-seven other bales, which had been purchased by her at places along the line of the railroad, and shipped to Macon to be compressed and stored. She also had one bale stored in said warehouse, for which it had failed to issue to her a receipt. While holding all of these receipts, complainant sold to one Frenkel the thirty-seven bales for which she held the warehouse receipts, but, by mistake, delivered the railroad receipts for thirty-seven bales, for which the warehouse company issued its own receipts, which were in the transaction delivered to Frenkel by complainant. Thereupon the warehouse company delivered to Frenkel thirty-seven bales of cotton, but whether it delivered the identical cotton represented by the railroad receipts or that represented by the warehouse receipts first issued, complainant is unable to state.

To secure a loan from the Merchants & Farmers' Bank of Macon, complainant pledged the receipts of the warehouse for thirty-seven bales of cotton which she had first stored. The warehouse company, however, refused to honor said receipts in the hands of the bank, although the bank offered to pay its charges for storage and compressing, and refused to account for its value, claiming that it had delivered to Frenkel the cotton called for by said receipts.

Complainant avers that if the warehouse company in fact delivered to Frenkel the cotton called for by the receipts held

by the bank, it did so without requiring a surrender thereof, and knowingly took from complainant, for Frenkel, railroad receipts calling for other cotton, and now refuses to deliver complainant or the bank, any cotton whatever.

Complainant is desirous of having her debt to the bank paid out of the proceeds of the cotton, which the warehouse company is still liable to account for, but the latter refuses to deliver it unless the railroad receipts are produced, a thing rendered impossible by the surrender thereof, made through mistake, in the Frenkel transaction.

The prayer of the bill is that the warehouse company be required to deliver to the bank the thirty-seven bales of cotton represented by its receipts, or, if the identical cotton cannot be found, because delivered to Frenkel, that it deliver the cotton for which railroad receipts were issued, and also that it deliver the one bale for which no receipt was ever issued, and which complainant wishes applied towards her debt to the bank; and, if none of the cotton can be delivered, that the warehouse company pay its value, less the charges thereon, to the bank, the proceeds or value of the cotton, as the case may be, to be applied to complainant's debt, and, as the cotton exceeds in value the debt, that the surplus be paid to complainant.

The bank was made a party defendant, and made its answer a cross-bill against complainant and the warehouse company, the allegations and prayer of the cross-bill being not essentially different from those of the original bill.

The court sustained the demurrer of the warehouse company to the bill and the cross-bill, and dismissed the same. Complainant and the bank appeal.

*J. E. Rives*, for appellants.

The bank, as holder of the receipts, is interested in the proceeds of the cotton, and is a proper, if not a necessary, party. Story Eq. Pl., § 72; 1 Daniel Ch. Pr., § 190.

Mrs. Selleck, having transferred the warehouse receipts to

the bank, the latter alone could bring replevin. She had no remedy at law. *Mortimore* v. *Ragsdale*, 62 Miss., 86. She only has a right of redemption. Story on Bailments, § 308. And this can be exercised in equity. *Ib.*, § 345. Even if she has a remedy at law, the remedy in equity is concurrent. 90 Am. Dec., 69. Besides, discovery is necessary to full relief, and will be given under the general prayer. 47 Miss., 636. If Mrs. Selleck should sue at law for the cotton, she would be met by the answer that it had been delivered to Frenkel. If she should sue for the other cotton, she would be met by the bills of lading which she had surrendered. A court of equity will not permit such an injustice.

*Ames & Drake*, for appellee.

1. On the showing of the bill, appellee either had the cotton on hand, or had disposed of it. In either case, the remedy of complainant is at law, either by replevin (*Pearce* v. *Twitchell*, 41 Miss., 344), or by trover. *Bailey* v. *Colby*, 34 N. H., 29; *Johnson* v. *White*, 13 Smed. & M., 584. If it is proper for her to sue, she should sue at law for the use of the bank. *Pearce* v. *Twitchell*, *supra*. The bill does not make out a case of mutual mistake—certainly no such mistake as will give equity jurisdiction. In the first place, the allegation is in the alternative that defendant either has the cotton covered by the receipts held by the bank, or still holds the cotton, it ought to have surrendered for the other receipts. If the first, then there is no mistake to have corrected. Defendant has the right to have taken as true the alternative statement which operates most strongly against complainant. *Foote* v. *Hambrick*, 70 Miss., 157.

2. There is an improper joinder of adversary parties as defendants. It cannot be said that Mrs. Selleck can go into equity to have the property pledged applied to the bank's debt, for it is not alleged that the bank is at fault in not enforcing its security. On the contrary, it is alleged that the

bank has endeavored to secure the pledged property and apply it.

The rule is, that parties having the same interest must stand on the same side unless some refuse. 1 Daniel Ch. Pr., 190. Again, if this is a bill to redeem, the defendant is improperly joined. Where there is no priority between the defendants or any joint liability, the bill joining them cannot be sustained. *Boyd* v. *Swing*, 38 Miss., 182.

3. The bill is so vague and uncertain that it is impossible to tell what cotton is supposed to be held by the warehouse company, what connection the Frenkel transaction has with appellee's liability, or on what ground complainant bases her right to recover. *Smith* v. *Gill*, 52 Miss., 607; *Perkins* v. *Sanders*, 56 *Ib.*, 733.

4. The bank, though a *bona fide* holder of the warehouse receipts, is in no better position than Mrs. Selleck. 40 Ill., 320; 84 Ga., 740; 17 Wis., 351; 11 Ore., 277; 14 Minn., 371; 10 Rich. (L.), 322; 11 Wend., 80; *Mortimore* v. *Ragsdale*, 62 Miss., 86.

Argued orally by *J. W. Drake*, for appellee.

WHITFIELD, J., delivered the opinion of the court.

*Pearce* v. *Twitchell*, 41 Miss., 344, as explained in *Meyer* v. *Mosler*, 64 Miss., 610, does not hold that an action of replevin can be brought in the name of one person for the use of another, but that, if it is so brought, only the rights of the nominal plaintiff can be regarded, the "name of the usee being treated as mere surplusage." If Mrs. Selleck had brought replevin in her own name for the use of the bank, the suit could not have been maintained. So counsel misapprehend *Johnson* v. *White*, 13 Smed. & M., 584; and *Bailey* v. *Colby*, 66 Am. Dec., 752, is not in point here. The bank alone could have maintained replevin or trover against appellee. *Mortimore* v. *Ragsdale*, 62 Miss., 86. We think the bill does sufficiently show

the kind of mistake, with reference to the confusion of the two lots of thirty-seven bales of cotton, which gives equitable jurisdiction, taken in connection with the other averments of the bill. On this point the averment is: "She further shows that said compress company now claims that it delivered to said Frenkel the cotton mentioned in its receipts, which are now held by said bank as collateral security, and refuses to honor said receipts so held by said bank, although requested by complainant and said bank to deliver said cotton to said bank, and although said bank has offered to pay said compress company its usual charge for compressing and storage; and also refuses to account to complainant for the cotton for which complainant held said railroad receipts, unless complainant present to said compress company said railroad receipts. But complainant states that if it be true that said compress company has delivered to said Frenkel the cotton mentioned in said compress company's receipts, it did so without requiring a surrender of said receipts, but knowingly took from complainant the railroad company's receipts, which called for other cotton, and now holds or refuses to deliver to complainant or said bank any cotton whatever."

The bank was a proper party defendant. It did not have "the same" interest identically with Mrs. Selleck, but in part a different interest. It was concerned merely to apply the proceeds of the cotton so far as needed to satisfy the debt for which it was collateral security. Mrs. Selleck was interested, not only to have this done, but to get for herself the surplus, if any, over the amount of the debt to the bank.

The citation, 1 Daniel Ch. Pl. & Prac., p. 190, note 5, is inapplicable, and so is *Boyd* v. *Swing*, 38 Miss., 182. In this last case the recovery sought against Boyd was on the bond, as surety of Thomas Arnot. The recovery sought against John W. Arnot, brother of Thomas, was for profits made by him by using the money coming to him from Thomas Arnot in planting. The parties were utter strangers to each other, the grounds of liability wholly different, and neither connected

with the other in any manner, nor with the conduct or dealing of the other touching the premises. The bill here presents the bank as holding the receipts of the compress company for the very cotton pledged by complainant to the bank, and the compress company as refusing to recognize its own receipts thus held, or to account for any cotton to either the bank, the pledgee of this cotton, or the complainant, its pledgor. Both the bank and the compress company have dealt with this very same lot of cotton, and out of this dealing have arisen the rights as well of complainant as of the bank.

It follows as a corollary from what has been said—the cotton being in the possession of the appellee—that the demurrer to the cross bill should have been overruled.

*The decree is reversed, the demurrers to the original and cross bill both overruled, and the appellee allowed thirty days from the filing of the mandate in the court below within which to answer.*