Boyd v. Swing, Admr.

SAMUEL S. BOYD v. PHILIP B. SWING, Adm'r, &c.

1. PROBATE COURT: JURISDICTION: WHEN IT MAY APPOINT COLLECTOR.—The Statute (Hutch. Dig. 654, § 37, and Rev. Code, 437, Art. 56) limits the jurisdiction of the Court of Probates to appoint collectors, to cases where there is a contest about a will, or where the executor is an infant, or absent; and hence, it has no power to make such appointment in a case of intestacy, and where there is no suggestion of the existence of a will, or contest in relation to its validity; and an appointment so made is void.

2. PRINCIPAL AND SURETY: SURETY OF COLLECTOR MAY SHOW THAT THE AP-

POINTMENT WAS VOID.—A surety on a collector's bond may show that the appointment of the collector was unauthorized by law, and therefore void; and thus discharge himself from liability on that account.

3. SAME : SURETY OF COLLECTOR NOT LIABLE FOR PROFITS, ETC.—A surety on a collector's bond, is not liable for the profits made by the collector by the use of the trust funds in his own business, but only for the principal and legal interest.

4. CHANCERY : JURISDICTION : DISCOVERY : COLLECTOR'S BOND.—A suit to recover for a breach of a collector's bond, is for a purely legal demand, and not within the jurisdiction of a court of equity, where it can be made available without a discovery from the defendant.

5. SAME : SAME : RULE WHERE DISCOVERY IS THE FOUNDATION OF JURISDICTION. —Where the jurisdiction of a court of equity, to give relief on a purely legal demand, is sought to be maintained, upon the ground that a discovery from the defendant is necessary, it must appear that material facts, indispensable as proof, lie exclusively within the knowledge of the defendant, and cannot, therefore, be established by other witnesses.

6. SAME : JOINDER OF PARTIES : CASE IN JUDGMENT.—Where there is no privity between the defendants, each being an entire stranger to the liability of the other, and sought to be charged on different grounds, and for different amounts, they cannot be properly joined in the same bill ; and hence, a bill cannot be maintained against a surety of a collector, who is liable only for the principal and interest of the trust fund, and also against a person who, upon the death of the collector, has succeeded to his estate ; and who is sought to be charged for the profits made, by the use of the trust-funds, by the collector in his lifetime, and by him since the collector's death.

APPEAL from the Chancery Court of Adams county. Hon. Hiram Cassidy, chancellor.

*H. T. Ellett*, for appellant.

I. The appointment of Armat as collector of the estate of McNeill was void, and consequently the bond signed by Boyd, as surety, is void.

It appears from the bill of complaint, that McNeill died intestate, and it is not pretended that there ever was any pretence or contest that he made a will.

The power of appointing a collector is limited by the statute to the following cases, to wit : " During any contest about a will, or during the infancy, or in the absence of an executor or executrix, or until a will, which may have once existed, but is destroyed, shall be established," the court may appoint any person or persons to

collect and preserve the estate of any decedent "until a probate of his will, or *durante minore œtate*, or until administration of his estate be granted." Hutch. Code, 654, see 37.

On the granting of letters testamentary, or of administration, the power of any such collector shall cease, and he shall deliver over, &c. Ib. 655, § 42.

It is clear that a collector can only be appointed where there is a will, or at least a contest about a will, for the act contemplates that after such contest, a case of intestacy may be established and administration granted, or an administrator *cum testamento annexo* appointed. The record must show a case in which the court had jurisdiction to appoint a collector, or the appointment is void. Here, a case of intestacy is shown, and the bill is silent as to the other conditions mentioned in the statute. Such an appointment is void for want of jurisdiction, and of course the bond is void also.

That the power to appoint a collector exists only "in certain cases," see *Searles* v. *Scott*, 6 S. & M. 250.

It may be that the ecclesiastical courts in England, possess the power to grant limited administrations of this kind, in cases not embraced by our statute. But our probate courts do not possess all the powers of the ecclesiastical courts, unless the same have been expressly conferred by the law and the constitution. It is certainly proper for the legislature to regulate and limit the powers of the Probate Court, and define the conditions and circumstances in which its powers may be exercised. It may prohibit the appointment of collectors altogether. It may deny the power of testators to make wills, or to appoint executors, and it may supersede the use of executors and administrators, and provide new machinery for the administration of estates. If it may do this, then it may limit the cases in which, and the circumstances under which, collectors or other administrators, may be appointed. Our statutes and judicial decisions are full of instances, of the denial to executors and administrators of powers, which they unquestionably possess by the law of England; as, the power of sale without an order of court; and at private sale, &c. &c. And when the legislature has undertaken to enumerate the cases in which a collector may be appointed, it is equivalent to an express prohibition against the exercise of the

power in any other cases, on the principle that " *expressio unius est exclusio alterius.*"

And if the power to appoint in the present case should be sustained, on the ground of the general powers of the ecclesiastical courts, still the bond given would be void, for that is prescribed by the statute, and is only authorized in cases to which the statute applies.

II. The bill shows no breach of the condition of the bond by the collector, so as to make the surety liable.

The condition of the bond, requires the collector to " deliver to the person or persons who shall be authorized by the Orphans' Court of the said county to receive the same, such of the goods, &c., as shall come to his possession, except such as shall be allowed for by the said court."

The whole act shows that the collector cannot administer anything. He cannot pay a debt, nor make distribution, but must, in all cases, deliver the property to the executor or administrator for the purpose of administration. He cannot be sued by a creditor, nor can the distributees proceed against him for distribution. He is not called in the statute an administrator *ad colligendum*, but simply a "collector," and his duty is merely to collect and preserve the estate until the executor or administrator shall be qualified. Thus, section 37 speaks of collecting and preserving the estate "until probate," &c., and the "safe keeping and delivering up the same, when required, to the executor or administrator." Section 40 provides for the allowance of commissions on the amount of property or debts actually collected, "and afterwards delivered, to an executor or administrator." By section 41, suits brought by a collector, shall be prosecuted to final judgment by the executor or administrator. By section 42, on the grant of letters testamentary, or of administration, the powers of the collector shall cease, and it shall be his duty to deliver, on demand, all the property, &c., except, &c., " to the person or persons obtaining such letters;" and in case of his evading such demand, or refusing or neglecting to deliver according to such demand, made at a reasonable time and place, the court may proceed, &c., or his bond may be sued by the person to whom such letters may be granted.

The settlement of his accounts is provided for in section 87, p.

663; and the allowance to be made of commissions, and of property as specified in the bond; and in section 42, shows that such settlement is contemplated before delivering over.

It is plain, then, that there can be no breach of the bond, until an executor or administrator has been appointed by the court which appointed the collector, and an actual demand made at a reasonable time and place, and an evasion or refusal to comply with such demand. It is unnecessary to inquire whether there must be a formal order made by the court, for the delivery of the property, or whether the mere appointment of the executor or administrator would confer, by implication, the necessary authority to receive it; for it is shown by the bill, that no letters testamentary, or of administration, have ever been granted, in this State, on the estate of McNeill.

Swing, the complainant, a foreign administrator, appointed in Ohio, is not authorized to demand or receive the estate of McNeill, by filing his letters and bond in the Probate Court of Adams county. His official character, being derived from a foreign source, can only be recognized here so far as our statute expressly recognizes it. The statute authorizing foreign administrators to sue in this State (Rev. Code, 467, Art. 131), does not apply to such a case as this at all. It applies only to cases of property or debts belonging or due to the decedent in his lifetime, and to which the administrator must make title as such. It only creates a privity between the foreign administrator and the debtor, where the administrator has come into possession of the property or evidence of debt, in the country of his appointment, and has there become actually liable for its administration. To give the act any other construction, would be to hold that a foreign administrator, by merely reporting an inventory of property that had never been out of the limits of this State, might withdraw the entire estate from the jurisdiction of our tribunals, for administration abroad, leaving our own citizens, who might be creditors of the estate, unpaid.

Another objection to the application of the statute to a case like the present, is found in the fact, that the article in question does not contemplate any action by the Probate Court, upon the record which the foreign administrator is required to file there. The filing is the act of the clerk, and need not even be done in term

time. It cannot, therefore, be said that Swing derives any authority from the Probate Court, to receive the estate of McNeill; and unless he is authorized by that court, it is no breach of the bond to refuse to deliver him the property.

And if the statute did apply, still a "demand" is necessary. There is no breach of the bond until an actual demand has been made, at a reasonable time and place; and until that demand has been, in fact evaded or denied. It is not a case where a constructive demand, by bringing suit, is sufficient. The demand alleged to have been made of John H. Armat, is a nullity. It is said he is a brother of the deceased collector; but it is not intimated that he is his executor, administrator, heir, distributee, or his representative in any sense.

III. But the bill, in fact, proceeds upon the very idea, that there has been no breach of the bond; and that Mr. Boyd is not answerable at law, and that complainant has no remedy but in equity. If this be so, then they have no remedy against Mr. Boyd anywhere. For he is only liable in the event that Armat has broken the condition, and he can only be sued anywhere, at law or in equity, upon and for a breach of the bond. And if the bond has been broken, so that he is liable to suit upon it, the remedy must be had in a court of law, and not in chancery.

The distinctive character of the bill is, that it seeks to change Mr. Boyd's position, from that of a surety to that of a principal. It seeks to convert him into the collector, in place of Armat, to require him to account for what it is clear he never received, and to obtain a decree against him, as if he had received and wasted the estate. And the only ground on which the proceeding is based is, the allegation that nobody has administered on Thomas Armat's estate. Yet he never agreed to administer, or to procure anybody to administer, and had no interest that there should be an administrator.

Presumptions, or equities, are never allowed in any degree to change or enlarge the legal obligation of sureties; and courts of equity cannot charge him further than he is bound at law. The claim against a surety is *strictissimi juris,* and the case must be brought strictly within the terms of the undertaking; and the liability of a surety can never be extended by implication. *Leggett*

*et al.* v. *Humphreys*, 21 How. U. S. 75; 3 Kent, 124; Burge on Surety, 40 ; *Miller* v. *Stewart*, 9 Wheat. 680 ; *McGill* v. *Bank U. S.*, 12 Wheat. 511 ; *United States* v. *Boyd*, 15 Peters, 187.

A court of chancery has no jurisdiction to settle the accounts of an administrator, or ascertain the balance. That is exclusively a matter of probate jurisdiction. *Blanton* v. *King*, 2 How. 856; *Carmichael* v. *Browder*, 3 Ib. 252; *Green* v. *Creighton*, 10 S. & M. 159.

The sureties cannot be sued in equity for the *devastavit* of the administrator, the remedy being at law. *Buckingham* v. *Owen*, 6 S. & M. 502 ; *Green* v. *Creighton*, 10 S. & M. 163.

If it is said that there is no administrator of Armat, and therefore no party to proceed against in the Probate Court, the answer is, the objection applies equally in this court. There are no parties to an account here. Mr. Boyd cannot be required to settle the account of Armat. He never undertook to do it, and it is impossible for him to do it. The Probate Court is the proper place for the account. Parties can be made there (but not here), by taking out administration on the two estates of Armat and McNeill. But the sureties are not amenable to its jurisdiction at all, and can only be sued after a final settlement and decree. *Green* v. *Tunstall*, 4 How. 651 ; *Steen* v. *Steen*, 25 Miss. 513, 534; *Burruss* v. *Thomas*, 13 S. & M. 459; *Jones* v. *Irvine's Executors*, 23 Miss. 361.

The cases of *McRea* v. *Walker*, 4 How. 455, and *Jones* v. *Irvine's Executors*, just quoted, are relied on to sustain this bill. In the former, the court said: "Where the powers of the Probate Court are found inadequate to a full and ample justice, either on account of the subject-matter, or the want of power to compel either party to appear, the aid of a court of equity may be invoked."

The remark was speculative, having no reference to the facts of that case. But here there is no want of power in the Probate Court, any more than in the Court of Chancery. There must be proper parties in both courts. The subject-matter is clearly of probate jurisdiction. The power is ample in both courts, to compel parties to appear. The difficulty is, there are no parties, no competent plaintiff or defendant.

In *Jones* v. *Irvine's Executor*, the court, after deciding that the surety could not be sued until after a decree of the Probate Court,

said : " If no person had administered on the estate of Munce (the executor) then, as was held in *McRea* v. *Walker*, a court of chancery would probably have taken jurisdiction, and in a suit against the surety, might have taken the account, and granted relief." Citing 6 Rand. 49 ; 5 Ib. 51.

This is a mere *obiter dictum.* There was no such point in the cause. Nor is there anything like it in *McRea* v. *Walker*.

If this were an adjudication of the point, it would be conclusive ; but it is not; and we respectfully dispute the proposition. We ask, can it be, where there has been no breach of the bond, and where the surety has incurred no liability, that merely because his principal has died, the Chancery Court can seize on the administration of the estate, convert the surety into an administrator, and compel him to account as such, and decree against him for the whole estate ? The proposition seems monstrous.

And it is unnecessary too, for the parties had a full remedy in the Probate Court, by administering on the estates of Armat and McNeill, or by suing John H. Armat, as executor *de son tort.*

They have all these remedies still, unless they have lost them by lapse of time.

IV. If the other points fail, the Statute of Limitations is a good defence for Mr. Boyd. Burge on Surety, 260, 272–4.

If he is under any legal liability, by reason of a breach of the bond, the liability occurred in 1841, when the money was collected, and when Armat put the facts on record in the Probate Court.

The limitation, under the Act of 1844, Hutch. C. 830, § 7, is seven years.

It is nowhere averred in the bill, that any of the distributees were under age, at any time within seven years before the filing of the bill.

This must be regarded as a suit by the distributees of McNeill; for after the lapse of time, the court will intend that the administrator has only taken out letters in order to recover the estate for them ; and if they are barred, he is barred, though ever so recently appointed. The case is fully within the decisions in the following cases, to wit: *Wood* v. *Ford*, 29 Miss. 65 ; *Manly* v. *Kidd*, 33 Ib. 141.

McNeill, it is alleged, left a widow and two children of " tender

years." He died in 1838. It is not pretended that she was under age at his death. Nor is it shown what was the age of the children, nor when they attained majority.

By the law of Ohio, the widow takes a child's share of personalty,—much as under our law.

If she, the widow, was of age in 1838, or even in 1841, which is not denied, then she and the children would all be barred, though the latter were still under age, according to the case of *Jordan* v. *McKenzie*, 30 Miss. 32.

The bill must state a case not barred by limitation; and if the time has *prima facie* run out, it must show the facts to take the case out of the statute.

V. The bill is demurrable also for misjoinder of parties. There is no privity between Boyd and John H. Armat, and no ground whatever is laid for any discovery or relief against the latter. He is not executor, administrator, heir, or distributee of Thomas Armat. The fact that he, living in another State, has there, by some means not shown, come into possession of a portion of Thomas Armat's property, does not make him liable to this action.

*W. T. Martin*, on same side.

*J. Winchester*, for appellee.

1st. It is contended that there is no right of action upon a collector's bond, until the extent of the liability of the administrator *ad collegendum*, is first established by a decree of the Probate Court. This question was substantially settled in the case of *Burruss, Judge, &c.* v. *Thomas*, 13 S. & M. 459, wherein it was held that it was not necessary, in order to sustain an action on a guardian's bond against the sureties, for a failure of the guardian to deliver the property to a subsequent guardian, that the plaintiff should have first obtained a decree of the Probate Court directing such delivery; nor in case of a defalcation, a decree of the Probate Court, fixing the amount of the guardian's indebtedness.

2d. It is contended that the remedy is at law, and not in equity. No doubt that Armat would have been liable in his lifetime, to a suit in the Probate Court for an account and payment as administrator *ad collegendum*, at the suit of the legal representative of

Archibald McNeill, and no rule of law would have prevented a similar suit against the personal representative of Thomas Armat, for a settlement of the account, and for a decree for any balance that was in Armat's hands. But the bill shows that there has been no administration upon Armat's estate, and none can be granted in this State, for the reason that he died in Louisiana, domiciled there, and left no estate here to be administered upon. And in such case, as has been repeatedly held by this court, equity will entertain jurisdiction. *Jones* v. *Irvine's Executors*, 1 Cushman, 366; *McRea* v. *Walker*, 4 How. 455; *Farve's Heirs* v. *Graves*, 4 S. & M. 711; *Archer* v. *Jones*, 26 Miss. R. 587; *Robb* v. *Griffin et al.* Ib. 579; *Wood* v. *Ford*, 29 Ib. 65.

3d. It is objected that the claim is stale, and barred by lapse of time.

The statute only runs where there is a person to sue or be sued. The bill shows there was no administration on the estate of McNeill until 1858, consequently the statute did not begin to run till there was a person to sue. And the account of Armat, as collector is open and unsettled in the Probate Court.

4th. It is next objected that there is a misjoinder of parties defendants; that there is a want of privity between the defendant Boyd and John H. Armat.

John H. Armat was a necessary party, 1st, for a discovery of the books, papers, and accounts of Thomas Armat, alleged to be in his hands; and 2d, for the use and disposition of the funds of Archibald McNeill, alleged to have come to his hands after the death of Thomas Armat. It is not the union of several matters, of a distinct and independent nature, against several defendants, which would make the bill multifarious. Story's Eq. Pl. § 271.

5th. It is next objected, that distributees and next of kin could, and ought to have sued. To this we answer, that the administrator and legal representative is the proper party to sue. He is entitled to the fund for the benefit, 1st, of creditors, and 2dly, for the heirs and distributees.

The case of *Spottswood* v. *Dandridge*, 4 Munf. R. 289, was similar in most of its features to the present case, and similar objections were made. It was there held, that where an executor dies without any personal representative, a court of equity may, at the

suit of a legatee, and without any previous suit having been brought against the executor to convict him of a *devastavit*, convene the sureties of the executor, or their representatives, and the persons who would be interested in any estate which the executor may have left, and make the sureties liable for any misapplication or wasting of the assets, which shall be established in the progress of such suit in chancery. *Clarke* v. *Webb et al.* 2 H. & M. 8 ; *Bacheldor* v. *Elliott*, 1 Ib. 10.

Another objection is taken here for the first time, not made in the court below, nor in the assignment of the special causes of demurrer.

It is, that the grant of letters *ad collegendum*, to Thomas Armat by the Probate Court of Adams county, was not authorized by law, and the grant was void, and therefore the security on his bond is not liable.

Conceding that the appointment was not authorized by law, it does not follow that the act of the court was void. It is true, that the probate courts of the respective counties are of exclusive local jurisdiction, and like all inferior tribunals, their acts and judgments must be shown to have been within the sphere of their jurisdiction, or they will be void. But within the sphere of their jurisdiction their acts are as valid and conclusive as those of courts of general jurisdiction. An error of judgment merely is binding until set aside.

The facts stated in the bill show that the Probate Court of Adams county had jurisdiction to grant administration on the estate of McNeill. He died there, left property there, and had no mansion-house or known place of residence in the State. These facts gave jurisdiction to the Probate Court of that county to grant administration on the estate. In the exercise of this jurisdiction, the court in every case has to decide whether letters testamentary, letters of administration with the will annexed, letters *ad collegendum*, or letters of administration in chief, shall be granted in the given case ; and to hold that an erroneous decision of the court in this particular would make the grant absolutely void, would be stripping the acts of the court of all faith and credit, and make them inquirable into collaterally, and be productive of the greatest mischief. No one could safely deal with an administrator or exe-

Boyd *v.* Swing, Admr.

cutor. His letters of administration issuing from the proper court would not be even *prima facie* evidence of authority. Such is not the doctrine; the grant of letters may have been wrong, but not void. Thus it is wrong to grant letters of administration, as in case of intestacy, when the deceased died testate; but yet the acts of the administrator will be valid until the will is probated and an executor qualified.

So it would be wrong to grant administration to a person not entitled under the statute, but yet, the acts of such person under the appointment will be valid until the letters are revoked.

But was the grant of letters *ad colligendum* ever erroneous in this case? Thomas Armat was a lawyer. He must have supposed that the court was authorized to grant him such letters, or he would not have applied. S. S. Boyd, the security on his bond, and without whose interposition the letters would never have issued (for the statute requires the bond to be given before letters shall issue), was an eminent lawyer, and he must have supposed that the court had authority to grant the letters. And it may be said that the courts and bar generally, have acted upon the supposition that the Probate Court was authorized to appoint an administrator *ad colligendum;* that is, a special administrator, in every case where there was no administrator in chief. It would be no strained construction of the statute to so hold. The spiritual courts of England could appoint a special administrator in all cases where it was necessary to preserve and protect the estate, and it was the manifest intent of the statute, to confer the same power on the Probate Court. The enumeration of some of the cases, and of those most frequently occurring, did not exclude others of a like character. The case at bar came within the spirit of the act, if not within the letter. McNeill had died in Adams county, leaving no creditor or kinsman there, entitled to take out letters of administration in chief. There was a debt due to his estate, which would be lost, unless the court could appoint a special administrator, to collect and preserve it. A fair construction of the statute, would justify the appointment of an administrator *ad colligendum,* in such a case.

But be this as it may, it lies not in the mouth of Armat, or his surety, to make this objection. They are estopped by their own act. We say here, as was said by this court in the case of *Roberts*

v. *Rogers*, 28 Miss. R. 155, "he ought not, therefore, to be permitted to go out of the record, which he himself has caused to be made, to show the invalidity of his own appointment."

The ecclesiastical courts of England had, from the earliest time, exercised the power to appoint a special administrator, whose office was limited as to time or purpose, in all cases where administration for any cause could not immediately be granted, and where it was necessary to protect and take care of the estate within its jurisdiction, for administration. And it is apparent, from the whole act authorizing the Probate Court to grant letters *ad colligendum*, that it was the legislative intention to confer, or rather recognize, the same power as existing here. The letters recite the fact, that "the administration whereof cannot immediately be granted, but which, if speedy care be not taken, may be lost," &c. And the powers of the collector are to continue, "until administration be granted," and the bond "may be sued by the person or persons, to whom letters testamentary or of administration may be granted."

These expressions show that it was contemplated, that a special administrator might be appointed, as well in a case of intestacy, where there was a contest about the right to administration, or during the infancy of the next of kin entitled to administration, as in the case of testacy. It was not the intention of the act to limit and restrict the power to the specified cases. Lomax, in his work on Executors (vol. i, 160), in commenting upon a like statute in Virginia, says, that the power to grant limited administrations, would have existed without such legislation. And in concluding the chapter on these special administrations, as granted by the ecclesiastical courts of England, says: "These limited or special administrations may, doubtless, be granted in the Courts of Probate in Virginia, as they are in the ecclesiastical courts. The statute has made no provision specially, except in cases."

HANDY, J., delivered the opinion of the court.

The bill in this case states, in substance, that the complainant, a resident of the State of Ohio, is administrator of the estate of Archibald McNeill, deceased, who resided in that State, but died in Adams county, in this State, in the year 1840, leaving no personal estate except a debt of about $820, due from one Franks;

that no one took out letters of administration on the estate of McNeill until letters were granted to the complainant, which took place in Ohio, in the year 1858; that soon after McNeill's death, Thomas Armat, of Adams county, an attorney-at-law for him, in May, 1840, took out letters, *ad colligendum*, and gave bond in the usual form, with S. S. Boyd, his surety, in the penalty of $1500, and on the 30th April, 1841, collected the debt of $820, and in July, 1841, returned an inventory of it, but never rendered any account of his administration thereof, and never paid the money to any person authorized to receive it; that several years after said collection, Armat removed to Louisiana, and there resided until his death, having taken with him there the said money; that, at the time of his death, he had no property in this State, and no administration has been or could be taken out in this State, as he had no effects in this State; that Armat mingled said money with his own, and used it in planting in Louisiana, and made with it great annual profits, of which the complainant prays discovery; that McNeill left a wife and two infant children of very tender years, then, and still residing in Ohio; that Armat never informed them of his said collection, or of his appointment as administrator, and they had no knowledge of it until within the last twelve months, although they had made diligent inquiry into the affairs of McNeill; that complainant took out letters in Ohio, at the request of the next of kin of McNeill, and gave bond, and made return of this debt as the whole estate, and in September, 1858, he presented copies of his letters of administration, bond, and inventory, to the Probate Court of Adams county; and in order that he might be authorized to demand and sue for said debt, said copies were ordered to be filed; that after Armat's death, all his property came to the hands of his brother John W. Armat, who is a resident of Louisiana, who has possession of the books and papers of Thomas Armat; that complainant has demanded of John W. Armat an account and payment of said money, which he has refused to comply with.

The bill prays that Boyd and Armat discover what use Thomas Armat made of said money, and what profits he made therefrom; that an account be taken thereof, and a decree therefor against them.

To this Boyd filed a demurrer, assigning numerous causes of

demurrer; which was disallowed, and from that order this appeal was taken.

Of the many grounds of demurrer taken to this bill, we deem it necessary to consider only three.

The first of these is, that the appointment of Armat as collector, was unauthorized and void in law, and hence, that the bond executed thereupon, creates no legal obligation upon Boyd as surety.

The bill shows that McNeill died intestate; and it is not alleged that he left a will, or that there was any contest pending about his will, or any proceeding to establish a will alleged once to have existed, and to have been destroyed. It is only under circumstances of this nature, that the Probate Court is clothed with power to appoint a collector. For if there be no suggestion of the existence of a will, or contest in relation to its validity, rendering it proper for the court to suspend action in the appointment of an administrator, it is the duty of the court to appoint an administrator, if the circumstances of the estate are such, as to give the court any jurisdiction in relation to the estate. The statute defines the power of the court in the appointment of collectors, and plainly limits it to the circumstances above stated. Hutch. Code, 654.

It is therefore not mere error, for the court to appoint a collector, without the necessity which the statute requires as authorizing the act; but the appointment is void, and it is competent to the surety on the bond executed under the appointment, to deny its validity.

The next objection which we will notice is, that the remedy, if any existed against Boyd, was at law.

So far as Boyd is concerned, the bill appears to be a mere suit to recover against him for a breach of the condition of the bond of Armat, on which he was surety. It is, in substance, that Armat collected the money, and has failed to pay it over, and, therefore, that Boyd is liable to pay it to the complainant. There is not even a suggestion that it is necessary that Boyd should make discovery as to the amount collected, or the profits made therefrom, by Armat, or that he has any knowledge upon those points not available to the complainant, except by discovery by Boyd. And this is necessary in order to sustain the jurisdiction in equity, on the ground of discovery. 1 Story Eq. Jur. § 74.

It is not alleged that Boyd has any knowledge of the alleged

gains and profits made upon the money by Armat; nor, for aught that appears, is there any pretence that he would be liable upon the bond, in any event, for the same. The only amount for which he could be liable on the bond, would be for the principal of the sum collected by Armat, with interest; and the bill shows that that sum is found in the inventory of Armat.

The bill, therefore, makes no case for relief in equity, against Boyd, on the ground of discovery; but, on the contrary, that ground appears to be distinctly negatived. It appears, indeed, as to him, nothing more than a suit to recover for a breach of the condition of the bond, without a feature necessary to confer jurisdiction in equity.

Again. The bill is objectionable for misjoinder of parties.

It proceeds against Boyd upon the bond, the measure of his liability on which could, in any event, only be the amount collected by Armat, with interest. But there is no pretence that John H. Armat is liable on the bond. On the contrary, he is sought to be charged for the profits and gains which have been made by using the money in planting, by Thomas Armat in his lifetime and since his death, on the ground that the property has come to the possession of John W. Armat, since the death of Thomas, and he has made profits by means of the money so employed.

It is, therefore, plain that the defendants are sought to be charged on different grounds, and for different amounts: Boyd on the bond, and Armat for the money, with all profits and gains therefrom, and each being an entire stranger to the liability alleged against the other. The grounds of their respective liability are different, their defences would be different, and there could be no common amount of recovery against them.

On these grounds, the demurrer should have been sustained, and the bill dismissed.

Let the decree be reversed, the demurrer sustained, and the bill dismissed.