## Sarah J. Ames et al. *v.* Bryant G. Williams et al.

1. Chancery Court. *General jurisdiction. Minor's business.*

> In minor's business, just as in matters of general equity, the chancery court exercises a jurisdiction conferred by the constitution— a general jurisdiction—and its records need not show the facts authorizing the exercise of such jurisdiction in a particular case.

2. Same. *Appointment of guardian. Presumption of validity.*

> The power of said court to appoint guardians for minors does not depend on the statute regulating its exercise, but is a part of the general jurisdiction conferred by the constitution. When such appointment is made, every presumption applicable to the judgment of any other court of record is to be indulged in support of the decree.

3. Same. *Clerk as guardian. Appointment. Presumption. Code* 1880, § 2117.

> Section 2117, code 1880, committing the guardianship of minors in certain cases to the clerk of the chancery court of the county in which they reside, does not confer jurisdiction on the chancery court, but is a mere statutory direction as to the exercise of its general jurisdiction already existing under the constitution, and compliance with the statute is presumed in every case where the jurisdiction is exercised.

4. SAME. *General jurisdiction. Decree. Collateral attack.*

As to this, the court is not one of limited or inferior jurisdiction, but, having general jurisdiction, its decree appointing the clerk guardian cannot be collaterally attacked by showing that the minor did not live within the county where the court was held, and this although the record is silent as to the residence of the minor. This can only be done by showing that under no circumstances could the court have exercised jurisdiction. *Farrer* v. *Clark*, 29 Miss., 195, overruled.

FROM the chancery court of Noxubee county.

HON. T. B. GRAHAM, Chancellor.

The opinion states the case.

*Mayes & Harris*, and *C. B. Ames*, for appellants.

It is not necessary, in this case, to discuss any general propositions in respect to the power of the chancery court to appoint guardians for minors, nor whether, in ordinary instances, the residence of the minor in the county constitutes a jurisdictional fact. All these questions are excluded by the fact that § 2117, code 1880, the law of the special instance, provides its own terms and fixes, beyond cavil, the facts of jurisdictional nature. The power of the state to appoint a guardian to a minor is one of those powers which the state exercises through its legislature, as *parens patriæ*, over all persons *non sui juris*. The state, of course, must operate through an agent, and § 2117, code 1880, indicates not only the conditions of fact under which the appointments are to be made, but also designates the agency through which they are to be made. The words "chancery court of the county in which such minor resides" are the terms by which the state designates its agent to make such appointment. None other than the agent so named can execute the power. It must be made by a certain chancery court—that is, the chancery court of the county in which the minor resides. In making the appointment in question, the chancery court is exercising a power conferred by statute in derogation of the common law, and the instance under consideration comes squarely within the rule laid

down in *Marks* v. *McElroy*, 67 Miss., 545. See, also, *Blake* v. *McCarthy*, 56 *Ib.*, 654; *Tell* v. *Stiles*, 60 *Ib.*, 849; *Railway Co.* v. *Blythe*, 69 *Ib.*, 939. Even if it be true that the jurisdiction over minors under the law is not a special jurisdiction, it is clear that the jurisdiction for the appointment of the chancery clerk is special within the purview of the decision in *Marks* v. *McElroy*, *supra*. It is wholly statutory and unprecedented. The true rule is, that, if the court be one exercising a special jurisdiction, the record must affirmatively show the jurisdictional facts, or its decrees will be void ; but, if it be a court of general jurisdiction, and its decree recites or adjudicates the jurisdictional facts, such recital or adjudication is conclusive, and cannot be controverted, except by the record itself ; but if, on the other hand, the decree contains no such recital, there is a presumption that the jurisdictional facts did exist, but that presumption is not conclusive either on parties or privies, but may be rebutted by extrinsic testimony. In support of the position herein contended for, see *Root* v. *McFerrin*, 37 Miss., 17; *Swain* v. *Gilder*, 61 *Ib.*, 667; *Duncan* v. *Gerdine*, 59 *Ib.*, 550; *Railway Co.* v. *Bolding*, 69 *Ib.*, 255. See, also, *Windsor* v. *McVeigh*, 93 U. S., 274; *Scott* v. *McNeal*, 154 U. S., 34.

The decrees appointing the guardian undertake, in this case, to settle the jurisdictional facts, and recite that it appears to the court a guardian was necessary, and that no one except the clerk would serve. We invoke the doctrine *mentio unius exclusio alterius est*. The decrees, on their face, indicate that the court did not adjudicate the residence of the minors. In support of our position that, the jurisdictional facts not appearing, the decree is void, see *Herring* v. *Goodson*, 43 Miss., 392; *Farrer* v. *Clarke*, 29 *Ib.*, 195; *Duke* v. *State*, 57 *Ib.*, 229; *Roberts* v. *Rogers*, 28 *Ib.*, 152.

Even if the decree be conclusive upon the parties and their privies, it does not conclude appellants, whose ancestor was not a party to the proceeding, but a mere surety on Mr. Patty's

bond as chancery clerk. Sureties of officers are not parties to proceedings against them. *Lipscomb* v. *Postell*, 38 Miss., 476; *State* v. *Hull*, 53 *Ib.*, 626; *Williams* v. *Flippin*, 68 *Ib.*, 680.

*J. E. Rives*, for appellees.

The chancery court had general jurisdiction over minors, and, therefore, all its orders and decrees are presumed to be valid, unless the record itself shows them to be void. Where the record shows jurisdiction, such decrees can be successfully attacked only by allegation and proof of fraud. The plea in this case admitted the existence of the record, but contradicted its truth, which was not allowable. *Westbrook* v. *Munger*, 62 Miss., 324. In *Duke* v. *State*, 57 Miss., 231, a decree of appointment by the probate court was held void only on the ground that the record itself showed that the court did not have jurisdiction. As to the conclusive effect of the decree as to jurisdiction, see 5 Smed. & M., 210; 8 *Ib.*, 421; *Mandeville* v. *Stockette*, 28 Miss., 398; *Pollock* v. *Buie*, 43 *Ib.*, 140; *Cannon* v. *Cooper*, 39 *Ib.*, 790; *Logan* v. *Brown*, 44 *Ib.*, 245. The record does not affirmatively show that the minors resided in Noxubee county, the court having general jurisdiction of the subject-matter, that fact is bound to have been passed upon by the court in making the appointment; it is, therefore, necessarily *res judicata*. *Weir* v. *Monahan*, 67 Miss., 434; *McClure* v. *Commonwealth*, 80 Pa., 167. Prior to the code of 1880, the court could not enforce the guardianship upon its clerk. Notwithstanding its general jurisdiction over the subject-matter, the court could not appoint a guardian unless some one would apply.

Section 2097, code 1880, made it the duty of the court, in counties in which minors have property, whether they reside in that county or not, to appoint a guardian for them if none have been previously appointed. . . Section 2117 made it the duty of the courts to appoint the clerk when no one else would apply. Construing the two sections together, it became the

duty of the court to appoint a guardian for each minor, either in the county in which he resides or in the county in which he had property. The minors in this case resided in another county but had estate in Noxubee county, and the appointment was valid.

Argued orally by *E. Mayes*, for appellant, and *J. E. Rives*, for appellees.

COOPER, C. J., delivered the opinion of the court. ·

Robert C. Patty was the clerk of the chancery court of Noxubee county, and C. B. Ames was one of the sureties on his official bond. Both Patty and Ames are dead. Patty, as clerk of the chancery court of Noxubee county, was appointed by that court guardian to the appellees, and their estates went into his hands. This is a proceeding instituted by the appellees in the said chancery court, against the representatives of Patty and Ames, praying that Patty's administrator may be required to settle the accounts of the guardian, and that, for any sums found to be due, proper decrees may be made against the representatives of Patty and Ames. The appellants, representatives of Ames, pleaded that there never was any valid appointment of Patty as guardian, because, at the time the supposed appointment was made, the appellees were not residents of the county of Noxubee, but resided in the county of Lowndes, by reason whereof the chancery court of Noxubee county was without jurisdiction to appoint the clerk of the chancery court of that county their guardian. On this plea issue in short by consent was taken, which on the hearing was found in favor of the appellees.

By § 2117, code 1880, it was provided that "if no one will qualify as guardian of a minor who has property, and is in need of a guardian, it shall be the duty of the chancery court of the county in which such minor resides to appoint the clerk of such court to be the guardian of such minor, who shall dis-

charge the duties of guardian to such minor according to law, and under the orders and directions of the chancery court, and subject to be dealt with as for a contempt for any failure so to do; but he shall not be required to give bond as guardian in such case, and his official bond shall cover his liability as such guardian, and he shall be bound and liable in all respects as any other guardian.'' On the twenty-sixth of April, 1886, George M. Gilmore, who was the uncle of all the minors, the present appellees, presented his petitions to the chancery court of Noxubee county, praying to be appointed guardian of their persons and estates. In his petitions for guardianship of the appellees, Bryant G. Williams and George M. Williams, the petitioner stated that they were children of ''Andrew M. Williams, late of said county, now deceased.'' In the petitions for the guardianship of George G. Williams and Andrew M. Williams, they are described as the children of '' the late Andrew M. Williams,'' and it is stated that they ''now reside in said county.'' On the twenty-eighth of April the petitioner filed other petitions, one in reference to each minor, in which he recited that he had theretofore prayed to be appointed as guardian of said minor, and he made his former petition a part of the later one, but that he had reconsidered the matter and determined not to accept the guardianship; that no one else would accept the guardianship, and that the infants had estates which required attention. He therefore prayed the court to appoint its clerk, Robert C. Patty, as guardian to said infants. On the twenty-ninth of April the court appointed Patty guardian of each of said minors, the order in each case being the same. One only is set out in this opinion. It is as follows: '' The guardianship of Bryant G. Williams: In the matter of the petition of George M. Gilmore for appointment of Robert C. Patty, clerk of this court, as guardian of said minor. The same being considered, and it appearing that the appointment of a guardian is necessary, and that no one will qualify, it is, therefore, ordered that said petition be granted, and that Rob-

ert C. Patty, clerk of this court, be, and he is hereby, appointed guardian of said minor."

On the trial of the issue presented by the plea of the defendants and the replication thereto, the complainants introduced the record of the proceedings in the appointment of the guardian. The defendants then offered evidence tending to prove that, at the time of Patty's appointment, the minors did not reside in Noxubee county, but were residents of the county of Lowndes. To this testimony the complainants objected, because it was an effort to contradict, by parol in a collateral proceeding, the record of the chancery court in making the appointment of the guardian; but the objection was overruled and the testimony admitted. Thereupon, the complainants, on their part, introduced evidence tending to prove that, in fact, they were residents of Noxubee county at the time of Patty's appointment, and, on the whole evidence, the chancellor found as a fact that the infants were residents of Noxubee county, and so decided. From such decree the chancellor allowed this appeal, in order that the principles involved may be settled by this court.

The question which lies at the threshold of the investigation is, whether the decrees appointing Patty as guardian of the infants can be collaterally attacked. If this be answered in the negative, the controversy is ended. The appellants contend that the chancery court is, as to its general exercise of the power to appoint guardians of infants, a court of inferior and limited jurisdiction, in the sense that its authority to act in each particular case must affirmatively appear an the face of the record. If mistaken in this, then they contend that, in the matter of appointing the clerk of the court as guardian to minors resident in his county, the court, though a court of general jurisdiction, is proceeding in execution of a mere statutory power, and in such cases its jurisdiction must affirmatively appear of record, because, as to such appointments, it is a court of inferior and limited jurisdiction. The question involved is

one of importance, and, in view of the want of harmony in
the decisions of this court in cases in which it has been pre-
sented, we have thought it best to review them somewhat, to
the end that a rule, consistent at least, shall be announced.

It has several times been decided that the probate court, to
which the jurisdiction in matters of administration and guar-
dianship formerly belonged, was a court of general jurisdic-
tion as to matters committed to it by the constitution and laws
over the administration of estates. *Frisby* v. *Harrison*, 30
Miss., 452; *Hardy* v. *Gholson*, 26 *Ib.*, 70; *Pollock* v. *Buie*,
43 *Ib.*, 140. But it was uniformly held that the jurisdiction
of the court over realty for the purpose of subjecting it to the
payment of the debts of the deceased was special and limited,
and that the facts warranting its exercise must affirmatively
appear of record. *Root* v. *McFerrin*, 37 Miss., 17; *Bank* v.
*Johnson*, 7 Smed. & M., 449; *Bank* v. *Martin*, 9 *Ib.*, 613.
And, in some cases at least, the rules applicable to courts of
limited and inferior jurisdiction were applied to instances in
which the court was proceeding under its constitutional juris-
diction. *Sullivan* v. *Blackwell*, 28 Miss., 737; *Steen* v. *Steen*,
25 *Ib.*, 513.

In *Vick* v. *Mayor*, 1 How. (Miss.), 379, it was held that the
power of the probate court to appoint an administrator *cum
testamento annexo*, and in *Boyd* v. *Swing*, 38 Miss., 182, that
of appointing an administrator *ad colligendum*, were statutory
powers, and could be exercised only under the circumstances
provided, which must be shown by the record to have existed.

In *Roberts* v. *Rogers*, 28 Miss., 152, one Rogers had died in
the state of Texas, and his property was in that state. The
appellee went to Texas, and there took charge of the property,
and brought it into Wayne county, in this state, where he pro-
cured letters of administration to be granted to himself. It was
held that the record did not show his appointment to be void,
and that the administrator was estopped to deny or controvert
the jurisdiction of the court to grant the administration.

In *Duke* v. *State*, 57 Miss., 231, the record of the probate court, by a recital in the guardian's bond, disclosed the fact that the minor was not a resident of the county in which letters of guardianship were granted, and it was held that the appointment was void.

*Tarver* v. *Clark*, reported as *Furrer* v. *Clark*, 29 Miss., 195, presented these facts, as an examination of the original record discloses, all the facts not being set forth in the opinion of the court: Tarver had been appointed by the probate court of Amite county as guardian of Margaret and Martha Neil. In the letters of guardianship the minors were referred to as the infant children of William P. Neil, deceased. In the guardian's bond they were described as Margaret and Martha Neil, of Amite county. Clark applied to the probate court of Pike county, and, by his petition, showed that "Lydia Neil, late of said county, deceased, left two children, to wit: Margaret Minerva and Martha Virginia Neil, who are now minors under the age of fourteen years." Tarver intervened, and contested the right of Clark to guardianship (1) because he himself had been appointed guardian for the infants by the probate court of Amite county; and (2) if that appointment should be held void, then he asked that he, who was the husband of the sister of the infants, should be preferred to Clark, who was their uncle, and that the court would appoint him guardian. The probate court decided against him on both points, and, on appeal to this court, the judgment of the lower court, declining to recognize the appointment by the probate court of Amite county and appointing Clark to the guardianship of the infants, was approved. In delivering the opinion of the court, Judge Smith said: "In the copy of the bond filed as an exhibit with the answer, the wards are described as Margaret and Martha Neil, of Amite county, and in the copy of the letters of guardianship they are described as the infant children of William Neil, deceased. These recitals were not evidence for any purpose whatever. Unless, therefore, the answer of the appellant, in the absence

of any evidence to sustain it, is to be taken as true, there was no proof identifying the wards, or which showed that the court of probate of Amite county had jurisdiction to appoint a guardian of their persons and estates." Proceeding to the other question involved, the court approved the appointment of Clark to the guardianship. A careful examination of the original record shows that there·was nothing in the proceedings suggesting that the infants were residents of the county of Amite, except the statement in the petition of Clark for guardianship that "Lydia Neil, late of said county, deceased, left two children," etc.

It will be noted that in *Duke* v. *State* it was held that the recital in the guardian's bond that the infants were residents of another county was held to be a showing by the record of a want of jurisdiction, while in *Turver* v. *Clark*, the recital in the bond that they were residents of the county in which guardianship was granted was held not to be evidence at all. It is also to be noted that, unless the statement in the petition of Clark that the minors were the children of "Lydia Neil, late of said county, deceased," was evidence of the fact that they were residents of said county, there was nothing in the record to show that fact; and this court, on a collateral attack, held Tarver's appointment to be void, ·and on direct appeal held Clark's to be valid, although the same infirmity existed as to each.

In *Weir* v. *Monahan*, 67 Miss., 434, it was held that where the petition for administration stated that the decedent left property in the county, and the order granting administration recited that fact as found by the court, it was not competent thereafter to attack the grant collaterally by proving that in truth the deceased had left no property in the county.

There are probably many other cases in which decision or discussion more or less nearly related to the subject in controversy may be found. The foregoing are sufficient to exhibit the want of harmony in our cases as a whole, and to demonstrate the impossibility of discovering any ground or principle

72 Miss.—49

on which they may be reconciled. In this condition of our own decisions we have felt free to examine the question in the light of principle and of authorities in other jurisdictions, to the end that a correct conclusion may be reached.

We are at a loss to conceive upon what principle it could be held that the chancery court, as to the jurisdiction conferred upon it by the constitution, is an inferior court in that sense in which the word inferior is used to characterize courts whose records must affirmatively show their authority to act in the particular cause. If the court of chancery be such inferior court, so, also, must be the circuit court and this court, for each is equally limited in the sense that its jurisdiction is not universal. This court has no original jurisdiction, nor has it jurisdiction of all appeals from inferior tribunals; there are appeals to the circuit court, and, in some cases, the judgment of that court is final. The jurisdiction of the circuit court is limited by a minimum, as that of justices of the peace is limited by a maximum, sum; nor can it be held that, as to some subjects of jurisdiction conferred by the constitution, the chancery court is a court of general, and, as to others, a court of inferior, jurisdiction. If, as to matters of general equity, its jurisdiction is held to be general, upon what ground shall its jurisdiction in matters of administration and of minors' business be held to be that of an inferior and limited tribunal? Nor does the fact that the jurisdiction in matters of administration and guardianship is, in its exercise, restricted by county lines convert the court from one of general, to one of inferior, jurisdiction. Undue importance has, in many cases, been given to the fact that, in matters of this character, the court is one having jurisdiction in a single county or city. But none of the courts of original jurisdiction in this state are unrestricted territorially. As to all, there are territorial limits of judicial districts. The terms of all are fixed to be held within counties, and jurisdiction is exercised over persons and prop-

erty within the counties, as distinguished from the state at large or the judicial districts thereof.

Many cases may be found in which it has been held that the residing or death of an intestate within the county in which administration is granted, or the presence therein of assets, are jurisdictional facts, which must be shown to have existed by the record of the court, or the grant of administration is void.

In some of the states this has been corrected by statute; in others a different rule has been pronounced by the courts. The great weight of authority now is, that questions of this class, when decided by the court granting administration, cannot be again brought in issue by a collateral attack upon the judgment; that the jurisdiction of the court does not depend upon the existence of the facts, though its proper exercise does. The annotation to the case of *Bolton* v. *Schriever*, 135 N. Y., 65, reported in 18 L. R. A., 242, contains a valuable collection and an intelligent classification of the authorities. The question has never been more clearly stated, and the correct principle more vigorously sustained, than by Judge Marshall, in *Griffith* v. *Frazier*, 8 Cranch, 9, and by Judge Tucker, in *Fisher* v. *Bassett*, 9 Leigh (Va.), 119. In *Griffith* v. *Frazier* the facts were, that one Salvador had died testate, appointing his three daughters and Stevens and Dacosta as his executors. All the appointees were absent from the state (South Carolina), except Dacosta, who was granted letters testamentary on probate of the will. Dacosta removed from the state in the year 1789, and remained absent until November, 1790. On October 8, 1790, letters of administration *cum testamento annexo* of the estate of Salvador were granted to one Lamotte. Bourdeaux, who had •obtained judgment against Salvador in his life, sued out a *scire facias* to revive this judgment against Lamotte, and the judgment was revived and execution issued thereon, under which certain lands were sold, which were bought by the plaintiff in ejectment, Griffith. Frazier, the defendant, claimed under the heirs at law of Salvador. The question involved was whether

the grant of administration to Lamotte was void, or erroneous only. Having stated the question to be whether the facts showed "an erroneous act or judgment by a tribunal having cognizance of the subject-matter," or "the act and judgment of a tribunal having no cognizance of the subject," Judge Marshall said: "The difficulty of distinguishing those cases of administration in which a court having general testamentary jurisdiction may be said to have acted on a subject not within its cognizance is perceived and felt. But the difficulty of marking the precise line of distinction does not prove that no such line exists. To give the ordinary jurisdiction, a case in which, by law, letters of administration may issue must be brought before him. In the common case of intestacy, it is clear that letters of administration must be granted to some person by the ordinary, and, though they should be granted to one not entitled by law, still the act is binding until annulled by the competent authority, because he had authority to grant letters of administration in the case. But, suppose administration be granted on the estate of a person not really dead, the act, all will admit, is totally void. Yet the ordinary must always inquire and decide whether the person whose estate is to be committed to the care of others be dead or alive. It is a branch of every cause in which letters of administration must issue. Yet the decision of the ordinary that the person on whose estate he acts is dead, if the fact be otherwise, does not invest the person he may appoint with the character or powers of administrator. The case, in truth, was not one within his jurisdiction. It was not one in which he had a right to deliberate. It was not committed to him by law; and, although one of the points occurs in all cases proper for his tribunal, yet that point cannot bring the subject within his jurisdiction. The case of letters of administration granted on the estate of a person in full life is not the only one which may serve for illustration. Suppose administration to be granted on the estate of a deceased person whose executor is present in the constant per-

formance of his executorial business, is such an appointment void, or is it only voidable ? In the opinion of the court, it would be an absolute nullity.'' The court, in that case, being of opinion that, by reason of the existing executorship of Dacosta, there was no jurisdiction in the ordinary to deal with the estate, held the grant of letters of administration to Lamotte to be. void.

In *Fisher* v. *Bassett*, one Robinson, a resident of Nova Scotia, died there, having no estate in Virginia except a legacy in the hands of the executor of one Grymes, in the county of Middlesex. Administration was granted upon his estate to one Scott by the hustings court of the city of Richmond, in which city the intestate had no estate. Scott received from the surety of the executor, who had wasted the legacy, certain bonds, secured by mortgage with power of sale *in pais*, which bonds he assigned, for value, to Fisher. When the bonds matured the obligor declined to pay them, on the ground that Scott was not administrator of Robinson, because the hustings court had no jurisdiction, under the statute, to appoint. an administrator except upon the estates of persons who had died, or who had property, in that city. The assignee of the bonds then advertised the property for sale, when the maker of the bonds sued out an injunction, and thus the question was presented whether the grant of administration was void or voidable only. In delivering the opinion of the court, Judge Tucker said: '' I do not consider a county or hustings court, in relation to the grant of administration, as standing on the same footing with the ordinary in England. The county court is a court of record, and its judgments or sentences cannot be questioned collaterally in other actions, provided it has jurisdiction of the cause. And this is to be understood as having reference to jurisdiction over the subject-matter; for though it may be that the facts do not give jurisdiction over the particular case, yet if the jurisdiction extends over the class of cases, the judgment cannot be questioned, for then the question of jurisdiction enters into

and becomes an essential part of the judgment of the court."
It was, therefore, held that the validity of the grant of admin-
istration could not be questioned in a collateral action.

All the decisions we have seen cluster around and are con-
trolled by the principles so clearly announced in the decisions
from which we have quoted. From the application of these
principles, great conflict of decision has resulted. These con-
flicting decisions may be grouped in three principal classes,
namely: (1) Those holding that, if a court has jurisdiction to
grant administration, its judgment can in no event be collaterally
attacked, even though administration be granted over the estate
of a living person, if the issue of death be presented by the
petition and decided by the court. *Roderigas* v. *Savings Inst.,*
63 N. Y., 460. (2) Those holding that, where there is an es-
tate to be administered over which the court has general juris-
diction, which jurisdiction ought or ought not to be exercised
under stated facts, if the jurisdiction be in fact exercised, the
judgment cannot be collaterally attacked by showing that the
facts in the particular case did not warrant the exercise of juris-
diction; but, if there were no circumstances under which the
jurisdiction could be exercised—*e. g.*, as that the supposed de-
cedent was in fact alive, or an executor or administrator had
been already lawfully appointed—the judgment may be col-
laterally impeached. (3) Those holding that, when the statute
limits the exercise of jurisdiction to particular facts or circum-
stances, it cannot be exercised at all unless the facts or circum-
stances really existed, and that they did may be shown for the
purpose of attacking the judgment even when collaterally
brought in issue. We concur with the decisions falling within
the second class as above distinguished.

It is, however, earnestly urged by counsel that, if it shall be
held that if the judgment of the court having jurisdiction to
grant administration or guardianship may not be collaterally
attacked by showing that, under the real facts, the jurisdiction
could not lawfully have been exercised, this rule should only

apply when it is shown by the record that the facts warranting
the exercise of jurisdiction were either directly found to be true
by the court or were stated by the petition invoking the action
of the court, and, therefore, their adjudication as true was in-
volved by necessary implication in the judgment of the court.
This contention of counsel finds support, certainly in the case of
*Farrer* v. *Clark*, 29 Miss., 195, and possibly in *Boyd* v.
*Swing*, 38 Miss., 182.    But if our court of chancery is, as we
have declared, a court of superior and general jurisdiction in
reference to matters of administration and minors' business,
and if, as we have also shown, the question of the residence of
the minor is one determining, not the existence but the proper
exercise of jurisdiction, there can be found no principle upon
which this contention can be supported, for it is settled by an
unbroken current of authority that, where nothing appears to
the contrary in the record of a court of general jurisdiction in
the exercise of its ordinary powers, all jurisdictional facts are,
when the judgment is collaterally attacked, conclusively pre-
sumed to have existed.

In *Farrer* v. *Clark*, this court seems to have held, on a col-
lateral attack on a judgment of the probate court of Amite
county granting letters of guardianship to Tarver, that the court
was one of inferior and limited jurisdiction, and, because the
residency of the minors in that county did not affirmatively ap-
pear of record, held that judgment to be void; and, yet, on
the appeal from the judgment of the probate court of Pike
county granting letters to Clark, the judgment was affirmed,
though there was a like want of the appearance of precisely the
same facts.    This case decides, in other words, that on a col-
lateral attack a judgment may be annulled for reasons for which
it would not be reversed on a direct appeal, which cannot be
law.    *Boyd* v. *Swing* is to be supported only upon the ground
that the power exercised by the court was of purely statutory
origin, and upon the reason given by Judge Marshall in *Griffith*
v. *Frazier*, *supra*, that the court had no power, in any event, to

deal with the estate except as given by statute. But the power of the chancery court to appoint guardians for the infants in the case now before us did not depend upon the statute. It was a part, and an important part, of its general jurisdiction granted by the constitution—a jurisdiction that might be regulated, but could not be abridged or withdrawn, by law. As to the exercise of this jurisdiction, all presumptions are to be indulged that could be in reference to the exercise of any jurisdiction by any court of record.

Much of the confusion that has existed in this state and elsewhere arose from the fact that matters of administration, at common law, were not the subject of common law but of ecclesiastical courts, and were principally directed by the ordinary, a mere ecclesiastical clerk. When, in the United States, this jurisdiction was conferred upon courts of record, these courts were, by the decision of the superior courts, dwarfed, because the jurisdiction they exercised was, at common law, largely ministerial, rather than elevated, as they should have been, to the full measure of their dignity and importance as courts of record. There is no sound reason why all presumptions which are indulged in favor of the regularity of the proceedings of courts of general jurisdiction should not always have been extended to all courts of record having jurisdiction in matters of administration.

We cannot assent to the final proposition of counsel for appellants that, in committing the guardianship of minors to the clerk of the courts, the jurisdiction exercised is of statutory origin. It is a statutory direction as to the exercise of a general jurisdiction already existing—the jurisdiction of appointing guardians to infants. The statute must, of course, be complied with, just as must statutes regulating the issuance, service and return of process or other matters; but the presumption of compliance therewith by the courts is as much to be indulged as that, in other matters, proper action was had.

If the record of the court discloses a violation of the law,

as in *Duke* v. *State,* its judgment would thereby be avoided, for no presumption can be indulged against the record. Freeman on Judgments, § 125; Black on Judgments, § 277.

*Affirmed.*