## E. S. ROBERTS et al. v. EMMA STARKE.

1. CHANCERY—PLEADING—MULTIFARIOUSNESS.—It is difficult to lay down any universal rule as to what constitutes multifariousness in equity pleadings. Each case must be determined very much on its own circumstances. Illustrations of this from the authorities and by the case at bar.

3. SAME—CASE AT BAR.—Where a bill combines separable subjects, demands different modes of relief against defendants not having a community of interest in all or any of the subjects, and against whom the complainant does not assert a common right, a demurrer to it should be sustained.

APPEAL from the chancery court of Montgomery county. COFFEY, Chancellor.

The opinion of the court contains a statement of the case.

*H. S. Allen* and *J. Z. George,* for appellants,

Contended that when a person, in order to place his property beyond the reach of his creditors, caused the title to be conveyed to another, equity will not afford him a remedy, but will leave him and his property in the condition he has chosen. The demurrer of defendants should have been sustained on account of multifariousness in the bill, citing 1 How. (Miss.) 510.

*D. A. Holman,* for appellee,

Insisted that the bill is not multifarious, and that the court was right in overruling the demurrer, citing and commenting upon Adams' Eq. 310; 2 Ala. 609; 2 How. (U. S.) 642; 4 Cow. 682; Story's Eq. Jur., § 285; Mitf. Eq. Pl. 181, 182; 7 S. & M. 630; 2 How. (U. S.) 602; Story's Eq. Pl. 232, 257, 885, 530; 3 Milne & Craig, 85; 5 Paige, 78; 3 How. (U. S.) 411; 6 Johns. Ch. 158; 5 Paige, 160; 27 Miss. 422; 1 S. & M. Ch. 17; Adams' Eq. 601; Noe's case, 4 How. (Miss.) 330; Muirhead v. Muirhead, 6 S. & M. 451; 25 Miss. 121; 33 Miss. 383, 581; 44 ib. 669; 13 S. & M. 302; 35 Miss. 605; 25 Miss. 221; 14 S. & M. 30.

SIMRALL, J.:

The bill has three aspects, seeking relief. As respects each,—First, the complainant claims a resulting trust in a lot of ground and improvements thereon, in the town of Winona. The trust is alleged to arise on this state of facts: The complainant was engaged in the mantua-making and millinery business. With a view of providing a home for herself and her mother (who is repre-

sented to be old and infirm), and for her sister, Mary C. Starke, who was assisting her in the business, she purchased the premises at the price of $1,400, paying one thousand dollars in cash out of her own means, which are said to have been the avails of her business; and her mother executed her note for $400 for the balance. This transaction is in substance thus stated in the bill: It was the special understanding and agreement between the complainant, her mother and her sister, Mary C. Starke, that the house and lot so purchased with the funds of said business should be used as a homestead in common until the death of said Ellen E. Starke (the mother), and should then belong equally to the complainant and Mary C.; and said Ellen E. should convey as aforesaid under the agreement. The deed was made to the mother. The motive of placing the title in her is thus given in the bill: "As the complainant was then in trade, and desirous of obtaining a home beyond the fluctuating casualties attending such business, she had the title taken in the name of her mother." Immediately after the purchase, the family went into possession.

The second aspect of the bill is, that there had been transactions between the complainant and her mother, creating the relation of debtor and creditor, but that, upon a proper adjustment of the account, nothing would be due to the mother. The complainant states that she had at several times borrowed money from her mother to the aggregate amount of a thousand dollars, but that she was entitled to have that sum credited with the board and clothing of the mother, which would amount to enough to offset the debt for the borrowed money. The complainant prefers a debt against her mother, which is alleged to be equal to her indebtedness to the mother, and she prays that the latter may be set off against the former.

The third aspect is, that the complainant, in consequence of failing health, found it necessary to retire for

a while from business, and turned it over to her sister, Mrs. Roberts, who was to conduct it as her agent, pay off outstanding liabilities, and keep up a supply of material and goods, to be paid for out of the proceeds. That Mrs. E. S. Roberts, since complainant has recovered her health, has declined to restore the business to her, or come to a settlement with respect thereto. That the services of the sister Mary were not worth more than her board and maintenance. Mrs. Roberts has paid no debts; is personally insolvent; claims that Mary E. Starke, by her own conduct, has abandoned the contract by which she was to have a half interest in the house and lot after the mother's death. That her mother, on account of age and enfeebled mind, has fallen under the undue influence of her daughter, Mrs. Roberts, who, combining with her sister, Mary E. Starke, has induced their mother, either by deed of conveyance or provision in a last will and testament, to give Mrs. Roberts one-third interest in the premises.

The relief prayed is, that a writ of sequestration be issued to take in possession by the sheriff the stock of millinery goods; and that they be adjudged to be the property of the complainant. That an account be taken between the complainant and her mother, and her sisters Mary E. and Mrs. Roberts, severally; that the resulting trust be established, and for general relief.

The demurrer assigns for cause that the bill is multifarious. The defendants appealed from the decree overruling the demurrer.

It was said by the court in Butler v. Spawn, 27 Miss. 237, quoting Story's Eq. Pl., § 530, that it is impossible to lay down an universal rule, as to what constituted multifariousness. Whilst a court of equity allows a broad latitude, to bring all persons before it, connected with each other, and the subject-matter of controversy, so as by one decision, to ascertain and establish the rights of each, and thereby conclude all,

this is done in order to avoid the vexation and expense of several suits when one might suffice. Whilst the precedents have been arranged, and classified so as to establish some general rules, nevertheless it is so difficult in some instances to make the application of them, that at last each special case must be determined very much on its own circumstances.

The bill may be maintained where the parties have a common interest in the subject, although they claim under distinct title. Story Eq. Pl., § 285. So, too, if the matters are of the same nature as respects the defendant, and in the same general right in the complainant. Mitf. Pl., §§ 181, 182. The bill cannot join several distinct, unconnected subjects against the same defendant, or several demands of distinct natures against several defendants. Story Eq. Pl., § 285. But it may unite two causes of complaint growing out of the same transaction, in the same right, where the relief asked is of the same general character. Story Eq. Pl., §§ 284, 286. If the complainants claim under one title, they may join several defendants who claim the estate, under distinct and separate purchases of parcels of it. Gwin v. Chew, 2 How. (U. S.) 602; Delafield v. Anderson, 7 S. & M. 630. If different subjects having no connection are united in a bill against several defendants, some of whom have no interest or connection with some of the subjects, it would be multifarious. Newland v. Rogers, 3 Barb. S. C. 432; Bryan v. Shawneytown, 14 Ill. 20. It occurs also where the causes of complaint against the defendants are separate and distinct as respects each other. So it would be if separate relief is sought against the defendants, touching distinct matters. To free the bill of the objection, where several subjects are set out, it must appear, as to the matters and relief sought, that all the defendants are connected, though differently, with the entire subject in dispute. Watson v. Cox, 1 Ired. 2 Eq. 289;

Cornwall v. Lee, 14 Conn. 534; Adams' Eq., top page 601, 602.

It seems to be clear, that this bill is obnoxious to one or more of the rules established in the authorities as tests of multifariousness.

As respects the trust in the land, the bill shows that only two of the defendants have interest in that, to wit: the mother and her daughter Mary. Mrs. Roberts has no benefit or connexion with it. The averments on this point are obscure in not defining distinctly the mother's right. The fair interpretation would be, that she should have a right to enjoy for life; not, however, to the exclusion of her two daughters, Mary and the complainant. It was to be the "homestead" of the family so long as the mother lived, and then should " belong" equally to the two daughters. It is quite evident that Mrs. Roberts is entirely disconnected with the case made in the bill on this subject.

It is also averred that Mary E. Starke by her conduct had abandoned the original agreement, ·or justified the complainant in so treating it; from which the inference might be deduced that the complainant would be remitted to her right, as if no such agreement was made; that is, to establish the trust in the land, in the proportion of the cash payment to the $400.

As respects the relief sought against Mrs. Roberts, that is limited to a restoration of the goods to the complainant, and an account of her agency in the millinery department. With this subject the mother, Mrs. Starke, has no connection; and it would be immaterial to her what decree was made in that behalf. Nor is it distinctly disclosed what interest, if any, the sister Mary has in these goods, or in the account. The averment is, that the· mantua-making branch of the business was turned over to Mary Starke, and she is called upon to make an account. Though not distinctly alleged, it is inferable that Mrs. Roberts had nothing to do with

this branch of the trade; certainly Mrs. Stark had not.

As to the amount of the complainant's debt to her mother, and whether it has been paid by the offset for board and maintenance, that subject has no direct connection with the trust in the land, and is wholly disconnected from and independent of the transactions between the complainant and her sisters about her goods and trade.

Three distinct subjects are preferred in the bill, which do not spring out of a common right as against all the defendants. Touching either or all of them, there is not a connection between the defendants and the respective subjects. All of the defendants are not interested in each subject-matter. If full relief were granted there would be two or three decrees, depending upon different rights, and as distinct from each other as if each were litigated in a separate suit. The subjects are independent of each other, do not have a common origin, but flow from separate and dissimilar transactions.

The vice of the bill is, that it combines separable subjects,—demands different modes of relief against defendants who do not have a community of interest in all or any one of the subjects, and against whom the complainant does not assert a common right.

We think the demurrer ought to have been sustained. The decree is reversed, judgment here sustaining the demurrer, and cause remanded, with leave to complainants to amend.