CASES ARGUED AND DETERMINED

IN THE

# SUPREME COURT OF MISSISSIPPI

AT THE

## OCTOBER TERM, 1913.

Z. M. GUESS ET AL. *v.* HATTIE STRAHAN.

[63 South. 313.]

1. EQUITY. *Bill. Multifariousness. Wills. Suits to construe. Juris-diction. Fees and cost. Payment from funds of estate.*
   A petition by a beneficiary under a will asking the court to require the executor to pay her an annuity, and to order the executor to pay her attorney fees for filing the petition, and to construe the will as to the rights, powers and duties of the executor-trustee, and to define the use and benefits of said estate intended by the testator to go to petitioner, and to direct the trustee how to manage the estate, and to fix the title of certain notes assigned by the deceased to petitioner in her, and attacking conveyances made by the testator in his lifetime, but without praying any relief relative thereto, was multifarious as uniting in one bill distinct and unconnected equities against disconnected defendants.

2. WILLS. *Suits to construe. Necessity for construction.*
   Where there is nothing ambiguous in a will and the executor was perfectly willing to carry out its provisions and has not asked for its construction and no difference has arisen between the

beneficiaries as to its construction, the court will not entertain a bill to construe such will, nor allow petitioner's attorney fees to be taxed against the estate.

3. WILLS. *Suits to construe. Jurisdiction.*

Where a will gives property in trust for a daughter of the testator, and gives the trustee full power in administering the estate for the use and comfort of the daughter, but directs him to administer it economically and for her comfort only, so that at her death a goodly portion might be left for the testator's grandchildren, in such case if the trustee and the daughter cannot agree as to the amount of the annuity to be paid the daughter, the chancery court has the power and it is its duty to fix the amount to be paid.

APPEAL from the chancery court of Attala county.
HON. J. F. McCOOL, Chancellor.

Suit by Hattie Strahan against Z. M. Guess *et al.*
From a judgment for complainant, defendants appeal. The facts are fully stated in the opinion of the court.

*J. T. Brown* and *Flowers, Alexander & Whitfield,* for appellants.

The bill is multifarious because: 1. It seeks to fix the amount of money the executor shall spend on appellee each year. 2. It seeks to try title and fix the ownership of certain notes. 3. It seeks to try title to certain land.

In general, multifariousness may be defined as the improper joinder, in the same bill, of several independent, distinct claims for equitable relief. The fault is analogous to that of duplicity at common law and is forbidden for the same reason.

It may be said that this defense is a technical one and is therefore objectionable under our liberal rules of pleading, yet when the real reason underlying the rule is taken into consideration, this objection loses its force. The true basis of the rule is, the protection of the defendant against presenting unnecessary defenses. It places upon him, as it were, the necessity of answering

more than he should be required to meet in the particular suit, and when there are several defendants, as is true in the case at bar, it places upon each a liability for costs, and for answering to matters with which he has no connection whatever, and as to which he may have no knowledge.

As said by this court: "It is difficult to lay down any universal rule as to what constitutes multifariousness in equity pleadings. Each case must be determined very much of its own circumstances." *Roberts* v. *State,* 47 Miss. 257.

The matters united in the bill are distinct and unconnected equities against the different defendants. *Columbus Insurance Company* v. *Humphries,* 64 Miss. 258. Complainant does not assert a common right against parties having a community of interest in all or any of the subject-matter. *Roberts* v. *State,* 45 Miss. 257. It seeks relief on different grounds against parties between whom there is no privity. *Boyd* v. *Swing,* 38 Miss. 182.

Another question which we feel warranted in calling the court's attention to is the prayer for the allowance of attorney's fees. The bill asks the court for a solicitor"'s fee for the services of appellee's counsel in presenting its petition.

We submit that as a matter of law the court was without the power to either charge the estate or the defendant's personalty with her solicitor's fees. Section 2131 of the Code of 1906 reads as follows: "In annual and final settlements, the executor or administrator shall be entitled to credit for such reasonable sums as he may have paid for the services of an attorney in the management or in behalf of the estate if the court be of the opinion that the services were proper and rendered in good faith."

The impropriety of such a rule can very readily be seen when we take into consideration the fact that if such was the law any person interested in an estate and feel-

ing aggrieved at the handling thereof, could file a suit against the executor or administrator and charge the estate with all their attorney's fees. It would cause many unnecessary and uncalled for suits. It would make it possible for anyone interested in the estate to employ his attorney, sue the estate and then make the estate pay his attorney's fees. The idea is preposterous. It is a litigated case and the interest of the executor and of the estate is adverse to that of complainant, hence the estate cannot be taxed with complainant's attorney's fees. *Bowles* v. *Wood,* 90 Miss. 742; *Smith* v. *Stansel,* 93 Miss. 69.

The court can only allow attorney's fees where his services are for the common benefit of all the parties. *Neblett* v. *Neblett,* 70 Miss. 572, and it cannot be claimed that the complainant's solictor in the case at bar is rendering a service to the common benefit of all interested.

There was no necessity for the intervention of a court of equity to construe the will. The instrument recites in unequivocal terms that the administrator is to have full power and control of the estate, and is to administer it economically for the comfort of the testator's daughter. The reason for this, as plainly expressed in the will, is that the testator did not wish to turn his estate over to the management of his daughter's husband. He wanted to provide for his daughter but for reasons best known to himself he was loath to leave his estate in such shape as to allow her husband to get hold of it. The cardinal rule for the construction of wills is that the intent of the testator, as evidenced by the language of the will, must prevail, if that intent can be carried into effect without violating some principle of public policy. As said by Lord MANSFIELD in *Perrin* v. *Blake,* 4 Burr, 2579: "The testator's intention ought at least to control any arbitrary rule, however ancient its origin, which is unreasonable or not established, or doubtful in its immediate application."

We submit that by an order of the court fixing an arbitrary amount to be paid monthly the very purpose for which the will was made will be frustrated. The testator's intention, which should be the controlling feature in all instruments of this character, will be thrust abruptly aside and an estate which could otherwise be intelligently and economically administered so as to carry out his wishes, will become a mere pool from which a monthly toll only can be taken, regardless of whether it is needed or not.

*F. M. Glass,* for appellants.

I submit that in the light of the facts disclosed by this bill, the chancery court is without jurisdiction to determine the question of the amount of the annuity, or the time and manner of payment of same, etc., for the reason that no allegation is made in the bill that said executor and trustee does not thoroughly understand the terms of said will and trust instrument and will not faithfully discharge his duties under same, as directed therein, or that said will is ambiguous, or that it is necessary for the court to intervene in order that the wishes of said testator may be fully complied with, even if said appellee were clothed with power to properly bring the matter before the court; but, I submit that, in the absence of mismanagement, negligence of said trustee, or acts of like kind on his part in regard to his trust duties, the beneficiary has no authority to ask the court to construe the trust instrument and determine the duties of the trustee under same, especially where, as in this case, the trust instrument clothes the trustee with full power and authority to exercise his "discretion" subject only to a certain request therein mentioned. If this authority lies at all, it is with the trustee, and it would lie with him only when the terms of the trust instrument are so vague and indefinite that the trustee could not determine his duties under same. In this case, the trustee does not

attempt to exercise such authority but appears as a party defendant, and no allegation is made which could tend to charge that the trustee does not clearly understand his every duty in the premises, and can and will faithfully discharge same.

I submit that said court would not have had jurisdiction under the facts as alleged, had the proceeding been filed by said trustee instead of against him, since the said will and trust instrument clearly shows that it was the intention of the testator that his friend, Guess, should exercise his exclusive discretion in regard to the discharge of his trust duties for the "comfort" of his said daughter, directing him only to administer same economically so that there would be a goodly portion left for his grandchildren, the remaindermen. It, therefore, shows clearly that the testator, reposing confidence in his friend, Guess, intended that Guess, and not the court, should use this discretion, and under the law in such cases, where the trust instrument shows the intent of the maker thereof, this intent must prevail and the direction contained in the trust instrument must be followed.

"It is only where there is some reasonable question or doubt as to their powers or duties, or as to the rights of the parties beneficially interested, that trustees are entitled to have the court's direction." 28 Am. & Eng. Enc. of Law (2 Ed.), 1052, and cases cited.

I desire to call the court's attention to the fact that said bill is multifarious in seeking to have the court construe said will and trust instrument, and determine for the trustee his duties in the matter of said trust estate, and thereby directng, through the court's order, the "discretion" given to the trustee by said testator, and making an allowance of attorney's fees for complainant's attorneys, on the one hand, and seeking a decree fixing the title to certain notes in complainant, on the other, thereby joining separate and distinct prayers for separate reliefs, and against separate and ditinct defendants. *Co-*

*lumbus Ins. & Banking Co. et al.* v. *Humphries et al.,* 64 Miss. 258, 1 So. 232.

This bill prays for an allowance of attorney's fees to be paid to the attorneys for complainant out of the funds belonging to said estate. There is no provision of law which would warrant the court to make such allowance, and in the absence of such provision the court is without authority to make same. Section 2131 of Mississippi Code of 1906.

For the reasons assigned, I submit that the learned chancellor erred in overruling said demurrers, and insist that the order overruling same should be reversed, and the demurrers sustained.

*Teat & Niles,* for appellee.

There were many grounds set forth in the demurrer to this bill, all of which have been abandoned except three grounds in brief of counsel, which are: First, that the bill is multifarious; second, that the solicitors' fees are unwarranted; third, that the bill does not need the construction of the chancellor.

The contention that the bill is multifarious cannot be taken seriously. The court will bear in mind that this bill embraces the estate only of E. C. Brister, deceased, and no other matter than the said estate; that said bill joins together the legatees in said estate and executor or trustee in his official capacity as such executor or trustee, and no other persons. The law has and does favor the settling in one suit of as many differences or contentions between the same parties and about the same matter as may arise between the same persons. It is evident that if separate bills had been filed upon the matters embraced in this bill, to-wit: one bill to fix an annuity or advancement for appellee, this would have involved the right of the legatees after the life of the estate, and would have made the trustee or executor a party to that bill. If a second bill had been filed to have cancelled the

deed by testator to Mrs. Ethel Stephens, the same would have again joined all of the legatees and the trustees. If a bill had been filed by the trustee touching the ownership of the notes referred to in the deed in escrow, this would have been a matter in which all parties would have been concerned, the legatees and trustee. If a bill had been filed by any beneficiary touching any matter set forth in complainant's bill herein, it would have necessitated the joinder of all parties to this suit. The unity of the estate and the unity of the person interested in it, clearly demonstrates this conclusion.

Taking it that these separate bills should have been filed, and an application to blend the same into one suit on the ground of multiplicity of suits would have probably been sustained under the recent case of the *Cumberland Telephone & Telegraph Company* v. *Williamson,* —— Miss. ——, 57 So. 559.

In the case of *Roberts* v. *Starke,* 47 Miss. 257, cited by counsel for appellant the converse of the rule is clearly announced.

The recent case of *Wilkes* v. *Wilkes* (Ala.), 57 So. 776, supports our contention, and is in point. The above rule is laid down in *Hardy* v. *Bulger,* 66 Miss. 577; *Ga. Pac. R. R. Co.* v. *Brooks,* 66 Miss. 583; *Dukate* v. *Adams,* 58 So. 475.

The second contention of counsel is that the fees sought in complainant's bill were unwarranted. This question is not properly raised by demurrer. Under section 2131, Miss. Code 1906, the estate may be charged, in the discretion of the court for services rendered it and in good faith. In so much as the executor or trustee did not join in the bill of complainant, under the recent case of *Murphey* v. *Harris,* 93 Miss. 286, 48 So. 232, the court will determine this question upon the hearing of the case. At this time all the parties interested in this estate will have an opportunity to enter their objections, and may rely upon the case of *Clopton* v. *Gholson,* 53

Miss. 456 for their protection upon the merits. It is evident that this question is prematurely injected. The third ground relied upon by appellant is that there was no necessity to call upon the court to construe the will.

Referring to item 2 of said will, we notice the language which the testator uses: "But if said Homer Strahan has not at my death paid back the sum of six hundred and fifty dollars which he borrowed from me and gave his note therefor, then he is to be charged with the amount due on said notes, if any, as an advancement in the division among my said grandchildren."

Now what advancement does this refer to? There is no advancement made to any of his grandchildren. Immediately after the death of the testator we find on record the deed in escrow left with T. P. Guyton duly executed by the testator in which he refers to certain advancements having been made, to wit: Nine hundred dollars to W. H. Strahan, and eight hundred dollars to Mrs. Leola Price, and remarkable as it may be, also in the closing paragraph of said deed, exhibit "A" to complainant's bill, this language: "This deed is in noway a revocation of my will, previously made."

What will does this refer to? The will duly probated, a prior or a subsequent will? Manifestly, it is inconsistent with the probated will under consideration.

Again: The deed referred to is an ante mortem gift. Delivery is essential to such gift. The deed by its very terms, "is to be delivered at my death to the grantee herein." But we contend that the estate of the testator vested in the legatees at his death, and at the very moment of his death. This taking place before the physical delivery by T. P. Guyton could be made to Mrs. Ethel Stephens the grantee in said deed. We therefore ask in whom did the title vest first? This is the attitude in which Mrs. Hattie Strahan was left as the sole beneficiary of the life estate of her testator. Again: The notice of Dr. W. H. Strahan, and Mrs. Leola Price had

not been given to them by the testator but had been transferred and delivered to the appellee, Mrs. Hattie Strahan. Now, in this attitude, was the testator undertaking to act upon the idea, that said deed in escrow was a nullity. We find upon further examination, a second deed executed by him on the 26th day of February, 1912 to Mrs. Ethel Stephens long after the execution of the deed in escrow but conveying the identical same property. If this grantor had divested the title of this same land fully and completely in his deed in escrow, then a second deed was a nullity. He has no title to divest from himself and into Mrs. Ethel Stephens, because same had been divested from him. But if said last deed was an advancement to Mrs. Stephens, then a goodly portion of this small estate had gone to this grandchild. Complainants had notice of other gifts, the nine hundred dollars to Dr. W. H. Strahan and the eight hundred dollars to Mrs. Price.

This is the dilemma in which complainant, Mrs. Hattie Strahan found herself upon the probation of her father's will, and the recording of the deeds. These developments, or changes of mind of her father were utterly inconsistent with his will, and practically nullified the trustee's duties.

Again referring to the will, in item 4, we find this clause: Said trustee is expressly given full power and control in administering my estate under this will for the use and comfort of my said daughter, but he is directed to administer it economically and for her comfort only, so that at her death a goodly portion may be left to my said grandchildren.''

The question then arises that if the major portion of the same hase been advanced to his grandchildren by his acts during his lifetime what would be the effect of this clause. By reference to his estate there is but little left—some twelve or fifteen hundred dollars, which would do but little for the comfort of the complainant "if the

goodly portion" must still be left over to his grandchildren.

Under the fourth allegation of complainant's bill she alleges that she is in need of the annuity provided for her in her father's will. Under the seventh allegation of her bill, she says she has received nothing from the estate of testator, or the trustee. Now, situated as she is, what is her plain duty? In the case of Owen v. Waddell, 87 Miss. 310, Judge TRULY speaking for the court says: The chancery court is clothed with full jurisdiction to determine all matters relating to the administration of estates, and is always open for the hearing of a petition by anyone interested, asking for the construction of the last will of the decedent. . . . She was granted by the will a comfortable support during her life, and in view of her advanced age, her helplessness, and her impoverished circumstances, it was manifestly the intention of the testator that this support should begin immediately upon his decease and continue as long as she should live. In view of the age and physical condition of appellee, as portrayed by this record, how idle and perfectly futile would have been this provision for her support if the contention of the executor be true, that she must wait until the expiration of the statutory period mentioned in the section cited, and then only recover at the end of litigation. Such a course would inevitably tend to, and might absolutely defeat the purpose of the testator, a purpose so worthy and so commendable that, in our opinion, under the peculiar circumstances of this case, the executors themselves, if in doubt as to their power, should have invoked the aid of the court to enable them to carry out the generous impulse of the testator, the common benefactor of them all."

The estate of the deceased was not certain. The possibility of conflicting contentions among the legatees was very great. The administration by the trustee would

require him to take charge of the estate, all of it, and if he was in doubt about what the estate consisted of, then to exercise diligence, and most probably bring a suit against Mrs. Stephens for a cancellation of the said deed, another suit against Dr. Strahan for the payment of his notes, and still another against Mrs. Price for the unpaid purchase price of the said lots and land. These legatees would claim the land, notes, etc., as advancements, and a multiplicity of suits would arise. This is not mere speculation. The complainant was and is in a position to almost know what will occur. Paragraph "F" of complainant's prayer is as follows:

"That the court take jurisdiction of all matters contemplated in said will and construe said will, setting forth the rights, powers, and duties of said trustee, and define the use and benefits of said estate intended by the testator to go to this petitioner, and to direct said trustee in the management of said real estate and in the loaning and handling of any cash or money which the court may adjudicate to his care and management, and to construe any and all controverted questions arising upon the hearing of this petition so that further on, additional litigation need not arise in the management of said estate."

Then why should not she ask the court to do these things? Is it not sound and equitable from every standpoint? Is it not exactly what ought to be done in the interest of all parties concerned? Is it not what this trustee or executor ought to do, if he wants to do his duty? Why should the matter be delayed until a controversy arises about the inventory?

Cook, J., delivered the opinion of the court.

A petition was filed in the chancery court of Attala county by Mrs. Hattie Strahan, appellee here, asking the court to construe the will of her deceased father. The petition states that E. C. Brister executed his will April

12, 1910; that he died April 25, 1912; and that his will was admitted to probate July 6, 1912. It is further stated in the petition that at the time of the death of her father his estate consisted of a house and lot in the city of Kosciusko and about one thousand dollars in money. Before the death of her father, and after the making of his will, viz., on January 25, 1912, it is stated that he donated and assigned to petitioner seven promissory notes executed by John D. Price and Mrs. Ola B. Price for one dollars each, and one note executed by W. H. Strahan for five hundred dollars, and note executed by W. H. Strahan for one hundred and fifty dollars. Petitioner further says that he had not realized anything from these notes, nor has she received anything from the estate of her deceased father. On the 30th day of June, 1911, it is stated that the father of petitioner conveyed to Mrs. Ethel Stephens two small lots situated in Kosciusko, which deed was left in escrow with T. O. Guyton, to be delivered by him to Mrs. Stephens after the death of the grantor; that subsequently, on the 26th day of February, 1912, her father executed a deed to Mrs. Stephens for the lots described in the escrow deed. It is stated that petitioner "is advised and believes that said last-named deed was an ineffectual effort of her said father to distribute or administer his estate, or some portion thereof, among his grandchildren, and that said advancement was either intended as an advancement under the will with the view in mind of making other advancements to each of said grandchildren, Dr. W. H. Strahan and Mrs. Ola B. Price, or that said deed should be canceled, and said property returned to the estate of the said E. C. Brister to maintain the impartiality and integrity of said last will and testament.

The will of E. C. Brister devised all of testator's property, real and personal to his daughter, petitioner and appellee, for her life, with remainder to her children, Mrs. Ethel Stephens, Dr. W. H. Strahan, and Mrs. Leola Price.

It will be seen, therefore, that after the execution of the will testator conveyed, by deed and assignment, all of his property, except a city lot and about one thousand dollars in money, to petitioner and to Mrs. Stephens. All of the children and Z. M. Guess, trustee and executor of the will, are made parties to the petition, and the following are the prayers of the petition, namely:

"(b)  That this honorable court shall hear evidence touching the amount of annuity to be paid over to her by said trustee during her health and normal condition of life, and reserve power and authority to provide and protect her against misfortune, sickness, want, or distress.

"(c)  That this honorable court shall decree and fix the title of said notes of John D. Price and Mrs. Ola Price and the notes of the said W. H. Strahan in this petitioner as her own personal property, and consistent with the intent of and acts of her deceased father, so that no difference shall arise between this petitioner and the trustee touching the ownership of said notes.

"(d)  That said amounts or annuities be decreed to be paid to this petitioner in monthly installments by Z. M. Guess, trustee and executor.

"(e)  That this honorable court shall determine and fix an adequate solicitor's fee for her solicitors of record, J. A. Teat and J. A. Niles, for their services in presenting this petition on the behalf of herself for the interest and benefit of said trustee and said estate, and direct the said trustee to pay over said sum to said solicitors as shall be determined by the court.

"(f)  That the court take jurisdiction of all matters contemplated in said will and construe said will, setting forth the rights, powers, and duties of said trustee, and define the use and benefits of said estate intended by the testator to go to this petitioner, and to direct said trustee in the management of said real estate and in the loaning and handling of any cash or money which the court may adjudicate to his care and management, and

to construe any and all controverted questions arising upon the hearing of this petition, so that further or additional litigation need not arise in the management of said estate.

"(g) And to grant any other further additional, special, or general relief as to the court may seem meet and proper upon the hearing hereof, as in duty bound your petitioner will ever pray," etc.

Z. M. Guess, executor, demurred to the petition, assigning the following grounds therefor, viz.:

"(1) Because there is no equity on the face of the bill.

"(2) Because said complainant does not attach to her bill as exhibit the will of E. C. Brister, deceased, so that the court can take judicial cognizance of the same.

"(3) Because said bill does not allege that she is not in comfortable circumstances, and does not alleged more than she is living with her husband J. W. Strahan, with no separate estate of her own, but fails to state that she is not abundantly provided for by said husband, or any necessity for the will.

"(4) Because the said bill is multifarious in this: It seeks an order of court fixing how much money shall be expended on her each year during her life, and also seeks to try the title and fix the ownership of several notes attached to complainant's bill and made exhibits thereto, and thus uniting in one bill distinct and unconnected equities against disconnected defendants.

"(5) Because said will referred to of E. C. Brister, deceased, alleged in the bill as being recorded in Book F of Wills, on pages 176 and 177, shows plainly and distinctly that said testator devised to complainant all of his property, both real and personal, that he died seised and possessed of for and during her natural life, subject to the terms and conditions therein named, and he appointed Zebulon M. Guess executor of his will, and as trustee of the funds and property of his daughter, the

complainant in said bill, and expressly gave him 'full power and control to administer my estate under this will for the use and comfort of my said daughter, and to be economically administered.'

"(6) Because the reading of the bill in connection with the will shows plainly that said testator was not in doubt as to the terms of said will, and there is no reason why this court should be called upon to make certain that which is already certain, plain, and easily understood as to the duty of said executor.

"(7) Because said bill does not allege sufficient reasons for the filing of the same, when read in connection with the will.

"(8) Because said executor alone could ask the court to construe the will, and would have to assert that he was in doubt as to its meaning and as to his duty in his petition for that purpose, for the reason that said will is clear and not ambiguous, certain, and definite.

"(9) Because said bill seeks to join in the same action and try the issue touching the amount of annuity to be paid over to her by the executor, and also to fix the title to certain notes named and described in the bill and made exhibits thereto, and seeks to ingraft in a decree amounts to be paid to petitioner monthly, when no such provision of the will contemplates anything of the kind.

"(10) Because a plain reading of the bill and the will referred to of E. C. Brister, deceased, though not made an exhibit, does not, cannot, and will not allow the plaintiff's counsel an attorney's fee for their services for the petition on file, and claim the same is for the interest and benefit of said trustee, Z. M. Guess, who does not join in the bill but is made a party defendant to the same.

"(11) Because said bill does not allege that the executor who acts for the estate, and who alone can do so, is in doubt about his power or his duty, and does not show any necessity to invoke the aid of this court to carry

into effect the terms of the will, because neither the insolvency of the complainant is alleged, nor sufficient reason to warrant this court in granting the relief prayed for.

"(12)  Because the bill does not allege that the executor of said estate is in doubt as to his duty, or that there is the slightest danger of him failing to promptly carry out the terms of the will in its letter and spirit.

"(13)  Because said bill is vague, indefinite, and shows no cause or reason why this court should interfere with the action of the executor, when there is no charge that he is in default in any manner, nor will become so, nor that the complainant's condition in life is urgent, pressing, and immediate, so as to invoke the aid of this court.

"And for other reasons apparent on reading of said petition in connection with its exhibits to be heard by the court in the argument of the case."

The demurrer was overruled, and the executor and Mrs. Ethel Stephens appeal. The other parties defendant did not enter their appearance.

Item 2 of the will the chancery court was asked to construe reads this way:  "I bequeath and devise to my only daughter, Hattie Strahan, all of my property both real and personal that I may die seized and possessed of for the term of her natural life, subject to the terms and conditions hereinafter named, as follows:  My desire being that her husband, J. W. Strahan, do not have the control or management of any of the money or property bequeathed or devised under this will, if said J. W. Strahan be living at my death, then the property so given to my said daughter for life to go to a trustee to be hereinafter named for my said daughter's use and benefit for her natural life."

Item 4 is in the following language:  "Reposing special confidence and trust in my friend, Zebulon Guess, I hereby nominate and appoint him executor of this my last will and testament and as trustee of the funds and

property of my daughter, as above named. I suggest that he make bond in a reliable surety company and that the expenses of same be paid out of my estate, or he may make it otherwise. Said trustee is expressly given full power and control in administering my estate under this will for the use and comfort of my said daughter, but he is directed to administer it economically and for her comfort only, so that at her death a goodly portion may be left for my said grandchildren.''

Petitioner asked the court to require the executor to pay her an annuity, and to order the executor to pay her attorney's fees for filing the petition. The court was asked to construe the will as to the rights, powers, and duties of the executor-trustee, and define the use and benefits of said estate intended by the testator to go to petitioner, and to direct the trustee how to manage the estate. The court was asked to fix the title of the notes assigned by the deceased to petitioner in her, but nothing said in the prayers about canceling the deed to Mrs. Stephens.

In the first place, we can see nothing ambiguous in the will; it is so plain that nothing is left to construction. No one seems to question petitioner's title to the assigned notes, and there is nothing in the record to suggest that the lots conveyed to Mrs. Stephens form any part of the estate; they having been conveyed to Mrs. Stephens during the life of the testator. There is no reason to suspect that the executor was not perfectly willing and ready to carry out the directions of the testator, and there is no intimation that any differences have arisen between the beneficiaries as to the construction of the will. The executor has not asked the court to instruct him as to his duties, and, indeed, so far as this petition is concerned, we can see no reason why the court should be called upon to construe the will. The petition suggests difficulties; but upon examination of the suggestions we find nothing substantial in any of them.

If the petitioner and the executor cannot agree about the amount of the annuity to be paid to her, of course, it is within the power, and it is the duty, of the chancery court to settle this matter. This petition does not aver that any such conflict has arisen. We can see no reason why the estate should be taxed with petitioner's attorney's fees.

We think the petition is multifarious; we think there is no reason for the court to construe the will. The deed made to Mrs. Stephens and the assignment of the notes to petitioner are perfectly valid, and are not inconsistent with the will. Upon a proper showing the court could fix the amount to be paid·petitioner out of the estate.

*Reversed and remanded.*