## CARTER et al. v. KIMBROUGH et al.

[84 South. 251, In Banc. No. 20961.]

1. EQUITY. *Dismissal of bill as to certain persons and claims final, where no further proceedings contemplated; "final decree."*

   A decree of a court of equity is final which dismisses the bill as to certain persons and claims, where the decree recites that it is final as to those persons and claims, and when there is no further hearing or proceedings contemplated being taken as to such claims or persons, even though the decree is not final as to other claims in the bill, and when further proceedings are to be taken as to some of the defendants.

2. EQUITY. *After term court of equity cannot set aside decree when matter completely disposed of.*

   It is well settled that a court of equity has no power after the expiration of the term at which the decree is rendered to set it aside when the matter adjudged is completely disposed of. Such decree can only be corrected by an appeal, or, in proper case, by a bill of review. *Sagory* v. *Bayless*, 13 Smedes & M. 153. *Shirley* v. *Conway*, 44 Miss. 434; *Lane* v. *Wheless*, 46 Miss. 666, cited.

3. EQUITY. *Supplemental bill cannot be filed after dismissal of bill; requisites of supplemental bill stated.*

   In order to file a supplemental bill, it must be shown that the matter relied on as supplemental has arisen since the commencement of the original suit; or that the facts have become known to the complainants in such way that he could use them, since the cause has passed the stage at which it might have applied for leave to amend; or that they have been prevented by inadvertence, mistake, or other cause specifically shown, from availing themselves of the matter at the proper stage of the case; and must be confined to such matter. It cannot be filed after the dismissal of the bill.

4. EQUITY. *Bill of revivor must be against personal representative of deceased defendant.*

   In order to bind the estate of a deceased defendant, the bill of revivor must be filed against the executor or administrator. It is not sufficient to make his heirs defendants.

5. EQUITY. *Bill combining separable subjects and demanding dif-*
*ferent relief against defendants without community of interest*
*is "multifarious."*

While it is difficult to lay down any universal rule as to what
constitutes multifariousness in equity pleadings, it is clear that,
where a bill combines separable subjects, demands different
modes of relief against defendants not having a community of
interest in all or any of the subjects, and against whom the
complainant does not assert a common right, it is "multifarious,"
and a demurrer to it should be sustained. *Roberts* v. *Starke*,
47 Miss. 257; *Darcey* v. *Lake*, 46 Miss. 109, and other cases.

APPEAL from the chancery court of Lafayette county.
HON. JAS. G. McGOWEN, Chancellor.

Bill by R. C. Carter and others, as stockholders or
depositors in the Merchants & Farmers Bank of Ox-
ford, Miss., against Duke M. Kimbrough and others, as
directors, etc., to recover money lost through their neg-
ligence resulting in the bank's insolvency. Final decree
dismissing the bill as to certain claims and certain
parties, and thereafter the complainants filed a bill of
revivor and supplement against the original defend-
ants or their representatives, new parties, the receivers,
the United States Fidelity & Guaranty Company of
Baltimore, Md., and others. On demurrers by separate
groups of defendants the bill of supplement and revivor
was dismissed, and complainants R. C. Carter and
others appeal. Affirmed.

The appellants, R. C. Carter and numerous other per-
sons, being depositors, and some of them stockholders,
of the Merchants & Farmers Bank of Oxford, Miss.,
filed a bill in the chancery court against Duke M. Kim-
brough, W. D. Porter, W. L. Goodwin, E. O. Davidson,
G. W. Buffaloe, Sr., E. D. Beanland, J. M. Matthews,
Miss Maud Heard, executrix of S. H. Plant, deceased,
Bradley Kimbrough, Mrs. P. H. Wright, Jr., and Mrs.
John W. McCall, for the recovery of money lost as al-
leged through the negligence and misconduct of the
directors of the said Merchants & Farmers Bank, in

which they declared that loans to various parties set out in the bill were negligently made by the board of directors, resulting in the insolvency of the bank and loss to the depositors and stockholders of the various sums set forth in the bill.

They alleged that the said bank was created and organized March 25, 1889, under and by virtue of the laws of the state, to carry on a general banking business, and soon thereafter began the banking business, and continued in said business until after January 8, 1914, when it suspended on account of insolvency, and was placed in the hands of receivers by order of the chancery court; that complaints were all depositors in said bank at the time of its suspension, and that some of them were stockholders; that the bank was created with an author- ized capital of one thousand dollars; that the bank be-- gan business with fifty thousand dollars capital, which was afterwards increased in 1903 by the issue of fifteen thousand dollars and in 1911 by an issue of ten thousand dollars, but that two thousand nine hundred and fifty dollars of the last increase was never disposed of, and at the time of the suspension of the bank it had an out- standing capital stock of sixty-five thousand dollars.

Complainants aver:

That during all the years from January 1, 1903, to January 8, 1914, when the said Merchants & Farmers Bank finally suspended, its officers and directors were as follows: First, during the years 1903-1904, B. T. Kim- brough, president; W. D. Porter, cashier; directors, B. T. Kimbrough, H. Whollenben, S. H. Plant, B. P. Gray, Winter Lewis, W. D. Porter, G. W. Buffaloe. During the year 1905, the directors were Kimbrough, Plant, Buffaloe, Gray, Porter, and Davidson; Kimbrough, pres- ident; Porter, cashier. During the year 1906 B. T. Kimbrough departed this life in May and the defend- ant Duke M. Kimbrough was elected a director in his stead; Porter acted as president. During the years

1907 and 1908 Plant, Buffaloe, Davidson, Porter, Lewis, Goodwin, and D. M. Kimbrough were directors; Porter, president; and J. F. Matthews, cashier. During the years 1909 to 1913, inclusive, and up to and including the 8th day of January, 1914, said Plant, Buffaloe, Davidson, Porter, Goodwin, Beanland, and D. M. Kimbrough were directors; W. D. Porter, president; J. F. Matthews, cashier.

That on the 8th day of January, 1914, a resolution was passed suspending the operation of the bank as a going concern, and that it liquidate its business, and that application be made to the chancery court for the appointment of a receiver, and a petition was presented, without notice, to the chancellor, and a receiver appointed, which is alleged to have been void.

That on the 9th day of January, 1914 R. L. Tomlinson, D. L. Ross, and S. W. Wardlaw filed a petition against the Merchants & Farmers Bank, indorsed, "Creditors' bill for appointment of receivers," and on the same day the bank answered, admitting insolvency and waiving process, and the defendants E. O. Davidson and J. F. Matthews were appointed receivers and took possession of all the books, records, assets, etc., except those debts, credits, and assets sued for by the complainants which had never been taken possession of or demanded or sued for by the said receivers. That at the time the receivers were appointed the bills receivable of the bank amounted to two hundred thirty-seven thousand nine hundred and seveny dollars and twenty-six cents, and over drafts twenty-three thousand three hundred and eighty-eight dollars and eighty-one cents, making an aggregate of two hundred sixty-one thousand three hundred fifty-nine dollars and seven cents, and cash in its vaults amounting to eight hundred ninety-eight dollars and seven cents. That the bank owed individual time deposits to the amount of forty-six thousand seven dollars and eighty-eight cents, and demand deposits to the

amount of one hundred forty-eight thousand three hundred ninety-one dollars and nineteen cents, making an aggregate of one hundred ninety-four thousand, three hundred ninety-nine dollars and seven cents due the depositors.

That the receivers have collected one hundred thirty-five thousand dollars on bills receivable, and on overdrafts seventeen thousand dollars, making an aggregate of one hundred fifty-two thousand dollars. That the receivers have paid out of said collections, upon the order of the court, a sum equal to seventy per centum of the indebtedness of the bank to its depositors, but that no payment had been made upon the interest on either time or demand deposits.

Complainants show that they have never made a request of receivers to bring any suit for the demands, debts, liabilities, and claims herein sued upon, because one of the receivers was a director at the time of the suspension, and it would be idle and useless to make such request.

It was further alleged that the business of the bank was conducted upon sound business principles from the time it opened until 1903, when it entered upon an unsafe, negligent, and reckless business career, which was steadily pursued until it resulted in the insolvency of the bank. The bill then particularizes the loans, the various amounts, and to the various persons alleged to have been negligently and recklessly made.

The answer denied all of the allegations of negligence and recklessness, admitting the loans set out, but contended that they were made with due care and prudence.

Much testimony was taken and the chancellor found on the hearing against the complainants as to all loans whatever made prior to the death of B. T. Kimbrough, and dismissed the bill as to all such claims, and against the heirs of B. T. Kimbrough generally. He dismissed the bill as to all matters against J. F. Matthews, who was

not a director, but was an officer and the cashier. He dismissed the bill as to all claims against all other parties subsequent to the death of B. T. Kimbrough, except as to the loans made to Bishop and Stahl, and as to Bogard & Harkins, succeeded by Bogard & Son, and appointed a special master to take evidence and find an account of the amount due upon those loans, and to report back to the next term of the court, together with the evidence taken before him. The decree, in terms, makes the judgment final as to all matters except the loans to Bishop and Stahl and to Bogard and Hawkins, succeeded by Bogard & Son. This decree was entered on the 29th day of July, 1918. Thereafter the master so appointed took evidence bearing upon the matters referred to him, and filed a report, stating the amounts found due, to which report exceptions were filed, but no further proceedings had been taken thereon.

W. L. Goodwin, one of the defendants, died on January 5, 1919, and on January 29, 1919, a bill styled a "Bill of Revivor and Supplement," was filed by the original complainants against all the original defendants, including the heirs of B. T. Kimbrough and the executrix of S. H. Plant, and making various new parties, and declaring upon all claims embraced in the original bill and adjudicated in the decree above referred to, and against the receivers of the bank, and against Kimbrough and Hutchinson, attorneys for the receivers, and against Mrs. H. E. Goodwin, widow of W. L. Goodwin, alleging that W. L. Goodwin departed this life on January 5, 1919, whether testate or intestate the complainants do not know and have not been advised; that no steps have been taken in this court looking to the administration and settlement of his estate; that said Goodwin left surviving him his widow, Mrs. H. E. Goodwin, but that she had not signified her intention to administer on her deceased husband's estate or waive her right so to do; alleging that W. L. Goodwin, during the last twenty-three years of his life,

was engaged in active business in Oxford, Miss., and was reputed to be, and was in fact, a man of considerable wealth, and at the time of his death owned an estate of the approximate value of one hundred thousand dollars, consisting of real estate, visible personal property, cash funds, solvent securities, bonds, notes, and choses in action; that at the time of his death he did not owe any debts, or have outstanding obligations, except his liability sued upon in this cause; and that said W. L. Goodwin and his wife, H. E. Goodwin, and his partner, J. B. Brown, desired and intended to place all of Goodwin's property in such a condition and legal *status* that would prevent it, or any part of it, from being reached by any judgment or decree that might be rendered in favor of the complainants on the liability involved in this suit; that pursuant to such agreement and conspiracy said Goodwin converted a large part of his property into cash, Liberty Bonds, and other obligations; and, upon information and belief, alleged that these securities, notes, and obligations were placed with the Bank of Oxford, where they still remain, and make the Bank of Oxford a party defendant to the alleged bill of supplement and revivor, to prevent it from surrendering or parting with the control of said property, and to make it liable if it did so.

It set forth various allegations of property sold or conveyed from Goodwin to Brown, alleging that said sale was made for fraudulent purposes, and with intent to hinder, delay, and defraud complainants; and that Brown had due notice of, and participated in, said fraud; and alleged that said transfers were without consideration, and were held as a secret trust for use and benefit of Mrs. H. E. Goodwin, and were to be delivered and transferred to her after the termination of this litigation, or at her option she was to be paid a consideration therefor. It alleged that Mrs. Goodwin and Brown by reason of said facts were executors *de son tort.*

It further alleged that Geo. M. Knight, David Pritchard and L. E. Walker had purchased certain of Goodwin's property, and they made defendants to the bill, it being alleged that when they received their deeds thereto each had notice of the intent of their grantors to hinder and delay and defraud complainants.

D. M. Kimbrough, as executor of B. T. Kimbrough, was made a party defendant to the bill of revivor and supplement, and also as director of the Merchants & Farmers Bank, and as attorney for the receivers of the bank after the appointment of the receivership. Certain grantees of the property and estate of B. T. Kimbrough were made parties defendant, and their conveyances sought to be set aside on the theory that the complainants, on supplemental bill and revivor, might recover from the estate of B. T. Kimbrough on the demands embraced in the original bill.

The bill attacked the appointment of the receivers as fraudulent and void, and sought to recover from them all sums paid out, and property sold by them as receivers of the bank, and sought to recover of Kimbrough and Hutchinson, a law firm composed of D. M. Kimbrough and Dudley Hutchinson, the sum of three thousand dollars, paid them by said receivers, alleging that the receivership was void, and the employment of said firm was void, and that they were incompetent to be appointed or to receive compensation. It sought to recover from the receivers commissions, amounting to seven thousand dollars, paid them as compensation for services as receivers.

It made the United States Fidelity & Guaranty Company of Baltimore, Md., a defendant to the alleged bill of supplement and revivor, and sought to recover from it sums of money paid to Kimbrough and Hutchinson, and to the receivers, and for one hundred fifty-five thousand, one hundred eighty-three dollars and fifty-one cents, alleged to be lost by negligence of the directors which the receivers made no effort to collect,

and for all other losses caused to complainants by the failure of the bank and the failure of the receivers to sue the directors and officers upon the claims set forth in the original bill, alleging that the said company had full knowledge of the fraudulent and void character of the receivership proceedings, and joined therein for the purpose and with the design and intent to defraud complainants of their interest in the assets of said bank.

Certain of the grantees of the estate of B. T. Kimbrough were made parties defendant to the bill of supplement and revivor, setting forth the specific property bought, and alleging that they had notice of the fraud of the grantor.

It is alleged that E. O. Davidson, one of the defendants in the original bill and the bill of supplement and revivor, had made certain conveyances to certain parties with intent to defraud complainants, setting forth the description, dates, and place where the deeds were recorded, and alleging knowledge of the vendees of the fraudulent purpose of the grantor.

It is further alleged that S. H. Plant died testate leaving a will, an examined copy of which is made exhibit to the bill, and that Maud Heard qualified as executrix thereof, and that all the personal property owned by Plant at his death had been administered and distributed to his legatees or heirs at law, unless it is cash funds in the hands of the executrix, and as to which she is required to disclose all facts, and sets forth specific real estate owned by Plant at his death which, it is said in the bill, is in the care, management, and control of the said executrix, and that she has been renting out and receiving the rents and profits thereof, equal to the value of one hundred bales of cotton per year.

The bill seeks to have all the conveyances referred to therein set aside so far as the complainants and their

rights are concerned and, among other things, prays that the cause be revived against Mrs. H. E. Goodwin and J. B. Brown, as executor *de son tort* of the estate of W. L. Goodwin, deceased, but does not seek to have an administrator appointed, nor does it seek to revive against the estate by or through an executor or administrator as such.

The bill of supplement and revivor was demurred to by the separate groups of defendants upon numerous grounds. The demurrers were each sustained, and the bill of supplement and revivor dismissed, and an appeal granted here to settle the principles of the case.

*C. L. Bates* and *L. C. Andrews,* for appellants.

*H. H. Creekmore, Russell & Falkner, Duke M. Kimbrough* and *Wilson & Armstrong,* for appellee.

ETHRIDGE, J., delivered the opinion of the court.

We deem it unnecessary to notice each ground of the demurrers filed by each group of defendants, nor do we deem it necessary to take up the demurrers specifically as to each group of defendants. We think the demurrers were rightfully sustained upon at least two grounds in the case of each, to wit: That the bill of supplement and revivor contained no equity, considered apart from the original bill; and, second, that the bill was multifarious as to all parties.

The bill sought to recover specifically against the receivers, as receivers for moneys paid out, and for negligence in failing to perform certain duties as receivers. It sought to recover against the receivers all sums of money lost by the bank prior to their appointment. It sought to recover from the defendants, not only the claims allowed by the chancellor and referred to a master for determination and report, but also for amounts

alleged to have been lost, but which had been adjudicated against them by the chancellor in the first decree. It sought to set aside numerous conveyances made by the defendants, some of which antedated the decree rendered in the case denying the rights claimed, which decree the chancellor in express terms made final as to such defendants and such claims.

It was insisted by the appellants that the chancellor's judgment dismissing the suit as to claims prior to the death of B. T. Kimbrough, and dismissing the claims not referred to the master, is an interlocutory decree which may be corrected or modified after the expiration of the term at which rendered.

This contention is not only contrary to the express recitals of the decree as to those claims, but it is perfectly evident that the decree dismissing the bill as to those claims and persons is final in its very nature. There was nothing further to be done, considered, or adjudged with reference to those claims.

It is well settled that a chancery court has no power, after the expiration of the term at which the decree is rendered, to set aside a decree where the matter is completely disposed of. The decree then rendered can only be corrected by an appeal or by a bill of review. *Sagory* v. *Bayless,* 13 Smedes & M. 153; *Shirley* v. *Conway,* 44 Miss. 434; *Lane* v. *Wheless,* 46 Miss. 666; *Le Blanc* v. *Railroad,* 73 Miss. 463, 19 So. 211.

The so-called bill of supplement and revivor does not conform to the law upon those subjects. In order to file a supplemental bill, it must be shown that the matter relied on as supplemental has arisen since the commencement of the original suit; or that the facts have become known to the complainants in such way that they could use them, since the cause has passed the stage in which he might have applied for leave to amend; or that they had been prevented, by inadvertence, mistake, or some other cause specifically shown,

from availing themselves of the matter proposed to be shown at the proper stage of the case; and the supplemental bill must be confined to such matter. It cannot be filed after the dismissal of the bill except as to matters necessary to carry out the decree rendered.

In so far as the question of a revivor against a personal representative of W. L. Goodwin is concerned, we think it is necessary to make the executor or administrator a party so as to bind the estate of Goodwin. There are many and obvious reasons why this is true. The administrator or executor having control of, and access to, all the books, papers, and property of the decedent, and representing creditors as well as the deceased, would be better able to defend or prosecute the suit and produce appropriate evidence. While a creditor may sue a person who assumes to act as executor or administrator, without authority of law, for such property as he may have disposed of, which the creditor had a right to subject to his demand, still this will not dispense with having an executor or administrator made a party in reviving a suit pending against a defendant at the time of his death. However, the bill as it effects the estate of Goodwin is multifarious, as well as defective in the respect above mentioned.

In *Darcey* v. *Lake,* 46 Miss. 109, it is said: "By multifariousness in a bill is meant the improperly joining in one bill distinct and independent matters, and thereby confounding them. When tested by this rule, the bill in this case will be found to be multifarious. (1) It is a bill to foreclose a mortgage for the benefit of the complainants. (2) It is a creditor's bill, seeking to have the estate of their deceased debtor administered and distributed in a court of equity. (3) It seeks, on the part of creditors at large, to set aside a conveyance of real estate, alleged to be fraudulent as to them."

The alleged bill of revivor and supplement, as to Goodwin's estate, seeks to establish against him as to the matter referred to the master by the chancellor, and as to matters adjudged favorably to him by the chancellor in the decree dismissing the bill as to certain claims, and to have an accounting between Brown and Goodwin, and to have a discovery from the Bank of Oxford, and seeks to set aside numerous sales and conveyances alleged to be fraudulent.

In *Roberts* v. *Starke,* 47 Miss. 257, it is said: "It is difficult to lay down any universal rule as to what constitutes multifariousness in equity pleadings. Each case must be determined very much on its own circumstances."

Again: "Where a bill combines separable subjects, demands different modes of relief against defendants not having a community of interest in all or any of the subjects, and against whom the complainant does not assert a common right, a demurrer to it should be sustained."

In *Thoms* v. *Thoms,* 45 Miss. 263, it was held that— "A bill of complaint by a wife, praying for an account against her husband for her separate property used by him, preferring her claim for alimony and maintenance, and seeking to enforce the wife's supposed rights touching the homestead, unites in it incongruous subjects for relief, and is multifarious and demurrable."

See, also, *Banking Co.* v. *Humphries,* 64 Miss. 258, 1 So. 232; *Hardie* v. *Bulger,* 66 Miss. 577, 6 So. 186.

In *McNiell* v. *Burton,* 1 How. 510, it is held that a complainant cannot demand in the same bill several distinct matters against several defendants; that the defendants must have a common interest in the same subject in relation to which relief is sought.

In *Boyd* v. *Swing,* 38 Miss. 182, the sixth syllabus says: "Where there is no privity between the defendants, each being an entire stranger to the liability of

the other, and sought to be charged on different grounds, and for different amounts, they cannot be properly joined in the same bill; and hence a bill cannot be maintained against a surety of a collector who is liable only for the principal and interest of the trust fund, and also against a person who, upon the death of the collector, has succeeded to his estate, and who is sought to be charged for the profits made, by the use of the trust funds, by the collector in his lifetime, and by him since the collector's death."

This case has been cited with approval in *Selleck* v. *Compress Co.,* 72 Miss. 1024, 17 So. 603. See, also, *McGowan* v. *McGowan,* 48 Miss. 553; *Jones* v. *Foster,* 50 Miss. 47; *Guess* v. *Strahan,* 106 Miss. 1, 63 So. 313.

What has been said is applicable to each of the demurrers on the ground of multifariousness.

After the complainants shall have recovered judgment for whatever may be found due on the claims referred to the master, if any of the persons against whom judgment may be rendered shall be or become insolvent so that the judgment cannot be collected, it may be that separate bills could be filed to set aside conveyances made by such parties, but we do not think that such suits should be maintained in the present bill, and especially so where no allegations of the insolvency of the estate or person is alleged.

The judgment will therefore be affirmed.

*Affirmed.*